IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES HEAD          *

    Plaintiff,          *

    v.          *        Civ. No. JKB-22-00566

CAPTAIN R. RAKOWSKI, JR., *et al.,*    *

    Defendants.          *

   *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM

While incarcerated at the Federal Correctional Institution ("FCI") in Cumberland, Maryland, Charles Head initiated the above-captioned civil rights action. (ECF No. 1.) In the operative Amended Complaint filed on October 25, 2022, Plaintiff raises claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2674 ("FTCA") against Federal Bureau of Prisons ("BOP") Captain Ricky Rakowski, Jr. and the United States of America. (ECF No. 17.) He alleges violations of the Eighth Amendment's guarantee against cruel and unusual punishment, and the torts of battery, assault, negligence, and malicious prosecution. (*Id.* at 5.) The allegations largely relate to events occurring in February 2022 at FCI Cumberland. Plaintiff seeks a declaratory judgment as well as monetary and injunctive relief. (*Id.* at 5–6.)

On February 13, 2023, Defendants filed a Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment. (ECF No. 26.) (hereinafter Dispositive Motion). In the Dispositive Motion, Defendants raise a host of defenses, including mootness, res judicata, failure to exhaust, qualified immunity, the discretionary function exception to the FTCA, immunity

under 28 U.S.C. § 2680(f), failure to state a claim, and the FTCA's judgment bar.[1] (*See generally* ECF No. 26.) The Court informed Plaintiff, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the Amended Complaint. (ECF No. 27.) Due to a delay in Plaintiff's receipt of Defendants' Motion, the Court granted him additional time to respond. (*See* ECF No. 33.) On August 23, 2023, Plaintiff moved for leave to file a Second Amended Complaint, and Defendants opposed the request. (ECF Nos. 35, 36.) Plaintiff has not filed any opposition to Defendant's Motion to Dismiss or for Summary Judgment, and the deadline to respond has passed. (*See* ECF No. 33.)

No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Plaintiff's Motion for Leave to File a Second Amended Complaint will be denied, and Defendants' Dispositive Motion, construed as one for summary judgment, will be granted in part and denied in part. In short, the Court will dismiss or grant summary judgment to Defendants with respect to many of Plaintiff's claims, stay proceedings with respect to Plaintiff's claims relating to COVID-19, and deny summary judgment with respect to Plaintiff's claims against the United States for assault and battery under the FTCA. The Court will also appoint counsel for Plaintiff.

## I.   Background

The following allegations are taken from Plaintiff's verified First Amended Complaint. (ECF No. 17) Because the First Amended Complaint is verified, it serves as an affidavit for purposes of summary judgment to the extent it is based on Plaintiff's personal knowledge, *see Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021), and the Court assumes the allegations therein to be true at this procedural posture, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] The Court will address many, but not all, of these arguments below. The Court does not address Defendants' arguments to the extent that the Court rules in Defendants' favor on an independent alternative ground.

255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff states that he suffers from several medical conditions that render him "extremely vulnerable" to COVID-19 infections, including asthma, a heart valve condition, and a high body mass index. (ECF No. 17 at 2.)[2]  In January 2022, he filed several requests for administrative remedy regarding "the FCI Cumberland prison administration's failure to follow BOP policy and procedures concerning the COVID-19 virus and ongoing pandemic." (*Id.* at 1.)  On February 3, 2022, while assigned to a COVID-19 "quarantine unit," Captain Rakowski arrived at Plaintiff's cell. (*Id.* at 2.)  Although BOP directives required Captain Rakowski to wear personal protective equipment including a gown, face shield, N-95 mask, and gloves, Captain Rakowski wore only a "blue surgical mask." (*Id.*)  Upon entering Plaintiff's cell, Captain Rakowski removed his mask and warned Plaintiff against filing additional grievances. (*Id.*)  Captain Rakowski then "clenched his fists, stepped toward plaintiff and swung," before "breaking items in the cell." (*Id.*)

Thereafter, Captain Rakowski told Plaintiff to exit his cell so that he could be searched before being transferred to the segregated housing units ("SHU") for allegedly violating prison policy. (*Id.*)  In so doing, Captain Rakowski falsified an incident report. (*Id.*)  During the ensuing search, Captain Rakowski pushed Plaintiff in the head and pulled Plaintiff's hair. (*Id.*)

Before being transferred to the SHU, Plaintiff asked Captain Rakowski to allow him to take his contact lenses and prescription depression medication, but his request was denied. (*Id.* at 3.)  Captain Rakowski seized eight bags of Plaintiff's property and either held them for an extended period of time or failed to return them to Plaintiff. (*Id.*)  In the SHU, Plaintiff was assigned to cells

---

[2] In support of his contentions regarding his medical conditions, Plaintiff has attached a declaration by Dr. Susanne PK Martin, M.D. (ECF No. 17-1 at 12–17.)  Dr. Martin has reviewed Plaintiff's medical records and has concluded that he "has multiple conditions that are known[,] based on the current literature, to increase the risk of severe COVID-19[.]" (*Id.* at 13.)

that had been occupied by COVID-positive inmates but not sanitized. (*Id.*)  Once again, Captain

Rakowski falsified an incident report against Plaintiff, leading to loss of his good time credits.

Plaintiff requested grievance forms; however, SHU staff did not provide any. (*Id.* at 4.)

In the time since he initiated this action, Plaintiff has been moved to several different

prisons and currently is incarcerated at FCI Englewood in Littleton, Colorado.  (ECF No. 30.)

## II.   Motion for Leave to File a Second Amended Complaint

Plaintiff seeks leave to file a Second Amended Complaint asserting that, pursuant to Fed.

R. Civ. P. 15(a)(1)(B), the Court should allow him to amend because he filed the Motion within

21 days of receiving Defendants' Dispositive Motion.  (ECF No. 35.)  The relevant portion of Rule

15(a)(1)(B) provides: "A party may amend its pleading once as a matter of course within . . . 21

days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b),

(e), or (f), whichever is earlier."  Plaintiff initiated the instant action on March 9, 2022 (ECF No.

1), then amended his Complaint on October 25, 2022 (ECF No. 17), after Defendants filed a

Motion to Dismiss or for Summary Judgment (ECF No. 15).  As Plaintiff has already amended his

pleading "once as a matter of course," he can no longer rely on Rule 15(a)(1)(B) in attempting to

file a Second Amended Complaint.

"In all other cases, a party may amend its pleading only with the opposing party's written

consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  Defendants have not consented to the proposed amendment. (*See* ECF No. 36.)

Nor does justice require leave to amend in this case.

As previously noted, Plaintiff filed his initial Complaint eighteen months ago and amended

it nearly a year ago.  Meanwhile, Defendants have twice responded to Plaintiff's claims.  From the

proposed amendment, it is unclear what changes Plaintiff intends to make.  Plaintiff does not

4

specify whether he is adding or deleting any facts or claims; nor does he provide any reasons for his request. (ECF No. 35.) Furthermore, the proposed second amended complaint appears substantially identical to the operative complaint. (*Compare* ECF No. 17 *with* ECF No. 35-2.) Given Plaintiff's lack of explanation for his need to amend and in light of Defendants' opposition, as well as the length of time that this case has been pending, Plaintiff's Motion for Leave to File a Second Amended Complaint will be denied. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (stating that undue delay, bad faith or dilatory motive warrant denial of leave to amend).

## III.    Standards of Review

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). However, if the motion is in the alternative a motion for summary judgment a court may in its discretion consider matters outside of the pleadings pursuant to Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). If the court does so, generally "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).[3] A plaintiff may defeat summary judgment at this stage by filing an affidavit under Rule 56(d)

---

[3] When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

attesting to his need to conduct discovery. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 627 (D. Md. 2020). But, especially in the case of a pro se litigant, the Court may excuse failure to file an affidavit if the plaintiff adequately informs the Court of his need to conduct discovery before responding to the summary judgment motion. *Id.* (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)).

Here, Defendants filed a Motion titled "Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment" and submitted additional materials in support. The Court provided a notice to Plaintiff that "a motion to dismiss or for summary judgment" has been filed against him and that he had a right to respond within 28 days. (ECF No. 27 at 1.) Therefore, Plaintiff was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis. Because Plaintiff has not responded with an affidavit or any other filing expressing a need to conduct discovery, and because summary judgment would "facilitate the progress of this case," *Pevia*, 443 F. Supp. at 627, the Court will construe Defendants' Motion as one for summary judgment.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court

6

must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656–57, 660 (2014) (per curiam). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## IV.    Injunctive and Declaratory Relief

Plaintiff has moved for injunctive and declaratory relief to have his legal papers and all other materials allegedly seized by Captain Rakowski returned to him. (ECF No. 17 at 5.) Plaintiff also asks the Court to "[e]njoin the BOP to quash incident report number 3593121." (*Id.* at 6.) The Court will deny both requests because it lacks a proper jurisdictional basis on which to grant the requested relief.

"Mootness principles derive from the requirement in Article III of the Constitution that federal courts may adjudicate only disputes involving 'a case or controversy.'" *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013) (quoting *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012). "A case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 809 (4th Cir. 2013) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). As mentioned above, the alleged unlawful conduct occurred at FCI Cumberland, but Plaintiff is now incarcerated in FCI Englewood in Littleton, Colorado. (ECF No. 30.) Furthermore, Defendant explains that Plaintiff's property has since been returned to him. (ECF No. 26-1 at 2). For these reasons, the Court holds that Plaintiff's claims

7

for injunctive and declaratory relief are moot and must be dismissed. *See Rendelman*, 369 F.3d at 187 (dismissing a claim for injunctive relief as moot because he was transferred out of custody); *see also Head v. United States*, Civ. No. GJH-22-238, 2023 WL 2163177, at *2 (D. Md. Feb. 22, 2023) (holding that Plaintiff's claims for injunctive relief are moot because he has since been transferred out of FCI Cumberland).

As for Plaintiff's motion to enjoin the BOP to quash Incident Report No. 3593121, the proper vehicle for expunging a disciplinary proceeding that resulted in the loss of good-time credits would be a writ of habeas corpus under 28 U.S.C. § 2241. *See Lennear v. Wilson*, 937 F.3d 257, 267 n.6 (4th Cir. 2019) ("[A] prisoner seeking the restoration of good time credits in federal court may only do so by way of writ of habeas corpus.") (alteration in original) (quoting *Pierce v. Freeman*, 121 F.3d 699 (4th Cir. 1997)). Even if the Court liberally construed the motion to quash as a habeas corpus petition, the Court would lack jurisdiction over the claim because Plaintiff is no longer incarcerated in the District of Maryland. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.") Thus, the Court possesses no jurisdiction to entertain this claim.

Accordingly, Plaintiff's claims for injunctive and declaratory relief will be dismissed.

## V. Res Judicata

Defendants argue that Plaintiff's claims in this case are precluded by the principles of res judicata because Plaintiff has brought two similar complaints in the District of Maryland. (ECF No. 26-1 at 4–8.) In *Head v. Beard* (hereinafter *Head I*), Plaintiff brought a habeas corpus petition challenging an internal BOP disciplinary proceeding relating to his unauthorized email usage in November 2020. *Head I*, Civ. No. DLB-22-00189, 2023 WL 2023217, at *1 (D. Md. Feb. 13,

8

2023). The district court dismissed that petition in February 2023. *Id.* In *Head v. United States* (hereinafter *Head II*), Plaintiff brought claims under *Bivens* and the FTCA relating to the conditions of his confinement and the state of medical care he has been provided at FCI Cumberland, which he claims puts him at a heightened risk of contracting COVID-19. Civ. No. 22-00238, ECF No. 1. *Head II* remains open with a pending motion to dismiss.

### A. Legal Standard

"The doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002).

*Claim preclusion* will bar a suit in light of a prior judgment when (1) "the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process;" (2) "the parties are identical, or in privity, in the two actions;" and (3) "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding—i.e., the claims arise out of the same transaction or series of transactions, or the same core of operative facts." *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (internal quotation marks omitted) (quoting *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315–16 (4th Cir.1996)).

A party seeking to rely on *issue preclusion* must show that (1) "the issue sought to be precluded is identical to one previously litigated"; (2) "the issue was actually determined in the prior proceeding"; (3) "the issue's determination was a critical and necessary part of the decision in the prior proceeding"; (4) "the prior judgment is final and valid"; and (5) "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum[.]" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (internal

quotation marks omitted) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir.1998)).

## B. Issue Preclusion

Neither *Head I* nor *Head II* has any issue-preclusive effect in this case. For issue preclusion to apply, the issue must have been actually decided, and that issue's resolution must have been a "critical and necessary part" of the final judgment. *Collins*, 819 F.3d at 744. Defendants cannot satisfy either element. In *Head I*, the Court denied as moot Plaintiff's request for injunctive relief for the return of his legal papers on the grounds that the papers had since been returned to him. Civ. No. DLB-22-00189, ECF No. 12. But the granting or denial of a preliminary injunction is not a final judgment on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395–96 (1981). The Court in *Head I* did issue a final judgment on other issues, but that judgment related to Plaintiff's complaint about a prison disciplinary proceeding against him relating to unauthorized email usage, which is wholly unrelated to the issues here. *See generally Head I*, 2023 WL 2023217. The analysis is even simpler for *Head II*, because there has been no final judgment in that case. Because there has been no final judgment on the merits of the issues in this case in either *Head I* or *Head II*, Defendants cannot show that Plaintiff's claims are barred by issue preclusion.

## C. Claim Preclusion

As for claim preclusion, the claims in the second matter must be "based upon the same cause of action involved in the earlier proceeding—i.e., the claims arise out of the same transaction or series of transactions, or the same core of operative facts." *Duckett*, 819 F.3d at 744. In *Head I*, the Plaintiff signed his habeas petition on January 22, 2022, and filed it with the Court on January 26, 2022. Civ. No. DLB-22-00189, ECF No. 1. The incident that forms the core of the present case occurred on February 3, 2022, over a week after the petition in *Head I* was docketed. (ECF

No. 17.) Plaintiff cannot have been expected to include in his petition in *Head I* a complaint about an event that had yet to occur. Although Plaintiff did subsequently refer to the February 3 incident involving Captain Rakowski in a preliminary injunction motion in *Head I*, that issue appears to have never actually been decided by the Court. Furthermore, although Plaintiff might have sought to amend his complaint to include the allegations about the February 3, 2022 incident, that incident can hardly be called the same transaction or occurrence as the incident that formed the basis of the petition in *Head I*. The incidents that formed the basis of the *Head I* habeas petition involved different defendants, different issues, and occurred between June 2020 and February 2021, a year before the incidents in this case. *See Head I*, 2023 WL 2023217, at *1. For these reasons, the Court finds that *Head I* has no claim preclusive effect.

Turning to *Head II*, a *dismissal* on claim preclusion grounds would not be proper, as there has been no final judgment in *Head II*. *See Duckett*, 819 F.3d at 744 (stating that a final judgment on the merits is an essential element of claim preclusion). However, "[a] federal court has inherent power to stay, sua sponte, an action before it." *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 (D. Md. 1984) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–255 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Here, the Court finds that a stay of the proceedings in this case is appropriate insofar as the First Amended Complaint brings claims relating to Plaintiff's potential exposure to COVID-19 while at FCI Cumberland.

In *Head II*, Plaintiff alleges inadequate medical treatment and conditions of confinement at FCI Cumberland put him at heightened risk of contracting COVID-19. *See* Civ. No. 22-00238, ECF No. 1. Plaintiff's First Amended Complaint in this case appears to make similar allegations

regarding conditions that, he alleges, place him at heightened risk of contracting COVID-19. (ECF No. 17 at 5.) Although the allegations in *Head II* relating to COVID-19 are not precisely the same as the allegations in this case, the complaints in both cases allege that the conditions at FCI Cumberland and the actions of corrections personnel improperly exposed Plaintiff to a heightened risk of contracting COVID-19. And although the incidents in this case occurred after Plaintiff filed the original complaint in *Head II*, the incidents occurred well within the time period during which Plaintiff could have amended his complaint as of right in *Head II* to include the additional COVID-related allegations. *See* Fed. R. Civ. P. 15(a)(1). Thus, if there were a final judgment in *Head II*, Plaintiff's COVID-19 claims might well be subject to dismissal on claim preclusion grounds. *See Ivy v. Balt. Cnty. Pub. Sch. Dist.*, Civ. No. WDQ-08-2435, 2009 WL 10727184, at *4 (D. Md. Mar. 4, 2009) (dismissing a subsequent suit on claim preclusion grounds because plaintiff "could have amended her [earlier] suit to include a retaliatory discharge claim"); *White v. Harris*, 23 F. Supp. 2d 611, 615 (D. Md. 1998) (dismissing a subsequent claim on res judicata grounds even though the subsequent complaint alleged new facts that occurred after the complaint in the first suit had been filed).

Claim preclusion is "designed to address the tension between two concurrent, independent suits that results when the two suits address the same subject matter, claims, and legal principles." *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016). The Court takes judicial notice of the fact that a motion to dismiss or for summary judgment in *Head II* is currently pending. Considering Plaintiff's COVID-19-related claims while a dispositive motion in *Head II* remains pending would inevitably implicate the tensions that claim preclusion seeks to avoid. For these reasons, the Court will stay proceedings related to Plaintiff's claims

regarding his alleged exposure to COVID-19 and deny without prejudice Defendants' Dispositive

Motion to the extent it challenges Plaintiffs' claims relating to COVID-19.

## VI.     FTCA claims

Plaintiff brings five claims against Captain Rakowski and the United States under the

FTCA: One claim each for assault and battery relating to the allegation that Captain Rakowski

swung his fist toward Plaintiff and struck his head on February 3, 2022; a claim for negligence

for unreasonably exposing Plaintiff to COVID-19; and two claims for malicious prosecution

relating to prison disciplinary proceedings. The Court will address these claims in turn, but first

will address the questions of Captain Rakowski's personal liability, exhaustion of administrative

remedies, and subject matter jurisdiction.

### A. Claims against Captain Rakowski

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. *See* 28 U.S.C. § 2679(b)(1). When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(1), (2). Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee.

*Osborn v. Haley*, 549 U.S. 225, 229–30 (2007). The Attorney General has delegated the authority

to make the scope-of-employment certification to the "United States Attorney for the district where

the civil action or proceeding is brought." 28 C.F.R. § 15.4. This certification creates a rebuttable

presumption that the employee was in fact acting within the scope of his employment at the time

of the alleged torts. *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000). This

presumption may be overcome "[i]f the plaintiff presents persuasive evidence refuting the

certification." *Id.* (quoting *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997).

Plaintiff's Complaint names Captain Rakowski as one of the two named defendants, alongside the United States. (ECF No. 17.) The United States Attorney for the District of Maryland has certified that "Rakowski was acting within the scope of his employment as an employee of the United States at the time of the incidents out of which the Plaintiff's claims arose." (ECF No. 26-10 at 2.) Plaintiff does not challenge this certification, and Captain Rakowski's alleged tortious actions occurred while he was on the job as a corrections officer at FCI Cumberland. (*See generally* ECF No. 17.) For these reasons, the Court is satisfied that Captain Rakowski was acting within the scope of employment at the time that the alleged torts were committed and is thus immune from suit. Therefore, the Court will dismiss Plaintiff's FTCA claims against Captain Rakowski.

### B. Exhaustion

The FTCA "requires that before an action may be commenced in court, the claimant must 'present' his claim to the appropriate administrative agency for determination." *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (quoting 28 U.S.C. § 2675(a)). The plaintiff may file suit in federal court only after 1) the agency has "finally denied" his claim, or 2) six months have elapsed since his claim was filed and the agency has not yet made a final determination. 28 U.S.C. § 2675(a). "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Kokotis v. U.S. Postal Serv.*, 223 F. 3d 275, 278 (4th Cir. 2000) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)).

In his Amended Complaint, Plaintiff alleges that he "submitted a tort claim under the FTCA to the . . . BOP" in March 2022 and that "[s]ix months passed without plaintiff receiving any response."[4] (ECF No. 17 at 4.) Plaintiff submits as further evidence a document attached to his

---

[4] The Court observes that Plaintiff's original Complaint (ECF No. 1) was subject to dismissal because it was filed in March 2022, and thus six months could not possibly have elapsed from the date that Plaintiff allegedly submitted his

Amended Complaint that he purports is a sworn statement he "submitted in conjunction with his SF 95 FTCA claim." (*Id.*; ECF No. 17-1 at 18–23.) Defendants argue that Plaintiff never submitted an administrative complaint to the BOP. They rely on the Declaration of Misty Shaw, a paralegal who is "in charge of logging each tort claim that the Mid-Atlantic Regional Office [of the BOP] receives from inmates." (ECF No. 26-2 at 2.) Shaw avers that the only tort claim filed by Plaintiff after February 3, 2022 (the date of the alleged assault and battery) was on June 3, 2022. (*Id.* at 5.) Shaw supports her contention by reference to attached BOP records, which appear to show that Plaintiff submitted only one tort claim after February 3, 2022, the date the challenged conduct arose. (*See* ECF No. 26-2 at 36.) That claim was filed on June 3, 2022, almost three months after Plaintiff initiated this suit. (*Id.*) Moreover, Plaintiff's June 3, 2022 claim sought $830 for itemized property taken on February 3, 2022 and did not relate to any of the tortious conduct alleged here, such as assault, battery, malicious prosecution, or conditions of confinement. (*Id.*)

Defendants' contention that Plaintiff never submitted an administrative complaint to the BOP is countered by a document that Plaintiff attached to his Motion for Leave to File a Second Amended Complaint.[5] This document appears to be a letter dated May 1, 2023 from the BOP to Plaintiff, informing him that BOP received an "administrative claim . . . under the [FTCA]" that alleges "assault, battery, intentional infliction of emotional distress and negligence." (ECF No. 35-2 at 9.) The letter states that the claim is denied and that Plaintiff "may file suit in the appropriate U.S. District Court not later than six months after the date of this letter." (ECF No.

administrative complaint. However, Plaintiff's First Amended Complaint was filed in October 2022; thus, by the time the First Amended Complaint was filed, six months could have passed since Plaintiff allegedly submitted his administrative complaint in March 2022.

[5] Although the Court is denying that Motion, the Court will consider this exhibit for the purposes of a summary judgment motion, given Plaintiff's pro se status.

35-2.) The letter does not state whether it refers to the February 3, 2022 incident and is generally short on details, but Defendants do not deny its authenticity. (*See generally* ECF No. 36.)

Plaintiff has produced sufficient evidence to show that there is a genuine dispute as to whether he properly complied with the FTCA's exhaustion requirements. Plaintiff's Amended Complaint is a verified complaint, which is the "equivalent of an opposing affidavit for summary judgment purposes" so long as it was based on personal knowledge. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). It is well-settled that at summary judgment the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Thus, when, as here, there are "competing affidavits" that tell different stories as to an issue of material fact, "summary judgment ordinarily is not appropriate." *Neal v. United States*, 599 F. Supp. 3d 270, 287 (D. Md. 2022) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006)). Simply put, the parties' competing affidavits create a genuine dispute as to whether Plaintiff filed a timely administrative complaint relating to his FTCA claims.[6] For this reason, the Court will decline to grant Defendants' Dispositive Motion related to Plaintiff's FTCA claims on exhaustion grounds.

Having concluded that dismissal or summary judgment on exhaustion grounds is inappropriate, the Court will turn to the merits of Plaintiff's FTCA claims.

## C. Legal Standard

---

[6] The Court notes that the BOP letter attached to Plaintiff's Motion for Leave to File Second Amended Complaint does not state when the grievance it references was filed. (ECF No. 35-2 at 9.) On the record before it, the Court cannot conclude whether the letter referred to the grievance Plaintiff claims he filed in March 2022, or to a later grievance. If the letter refers to a grievance that was filed later than April 25, 2022, then six months could not have elapsed before Plaintiff filed the First Amended Complaint on October 25, 2022. If the letter refers to a grievance filed later than April 25, 2022 then the BOP's letter would not constitute evidence of exhaustion, as Plaintiff cannot cure a failure to exhaust after a complaint has been filed (unless there is a new operative complaint). *See Messino v. McBride*, 174 F.Supp.2d 397 (D. Md. 2001). The Court emphasizes that is it *not* concluding that Plaintiff *did* exhaust his FTCA claims; it simply holds that a genuine dispute on the matter exists.

"The FTCA provides a limited waiver of sovereign immunity for civil actions against the United States." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016). The statute "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). To bring a claim under the FTCA, the plaintiff must allege that the claim is:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Brownback v. King*, 592 U.S. ___, 141 S. Ct. 740, 746 (2021) (alterations in original) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b))). All six elements are jurisdictional requirements that a plaintiff must plausibly allege both to state a claim and to establish subject matter jurisdiction. *Id.* at 749. To determine whether the sixth element is satisfied, the Court must look to state substantive law to determine whether the defendant would be liable for the alleged conduct if the defendant had been a private individual at the time of the conduct. *See Pledger v. Lynch*, 5 F.4th 511, 522–523 (4th Cir. 2021).

The FTCA is "cabined by a list of exceptions," which, when applicable, "work to defeat the subject matter of the federal courts." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020) (citing 28 U.S.C. § 2680). Most relevant here is the statutory discretionary function exception. This exception provides that there is no waiver of sovereign immunity for "[a]ny claim based upon an act or omission of an employee of the Government, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception "is to prevent 'judicial second-

guessing' of decisions grounded in social and political policy." *Rich v. United States*, 158 F. Supp. 2d 619, 628 (D. Md. 2001) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)). To determine whether the discretionary function exception applies, the Court must engage in a "two-step analysis." *Sanders v. United States*, 937 F.3d 316, 328 (4th Cir. 2019) (quoting *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017)). First, the Court must determine whether "a statute, regulation, or policy specifically prescribes" the employee's course of action (in which case the "conduct cannot be discretionary") or whether the conduct "involves an element of judgment or choice" (in which case the conduct may be discretionary). *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, "[i]f the challenged conduct 'is the product of judgment or choice,' this Court must then 'determine whether the decision made was based on considerations of public policy.'" *Sanders*, 937 F.3d at 328 (quoting *Wood*, 845 F.3d at 128). The Court "must be assured that Congress has waived sovereign immunity" under the FTCA and may raise the issue of sovereign immunity sua sponte. *Medina*, 259 F.3d at 223–24.

### D. Assault and Battery

#### 1. *Overview*

Plaintiff's assault and battery claims arise out of the February 3, 2022 incident. In short, Plaintiff alleges that, in retaliation for Plaintiff filing complaints about the prison, Captain Rakowski came into his cell and threatened to "give [Plaintiff] about seventy write-ups." (ECF No. 17 at 2.) Captain Rakowski then "clenched his fists, stepped toward plaintiff and swung toward" him, before "breaking items in the cell." (*Id.*) Rakowski then searched Plaintiff for contraband, pushing Plaintiff in the head and pulling his hair during the course of the search. (*Id.*)

The Court concludes that the first five essential elements of an FTCA claim are present. Plaintiff has brought suit against the United States; he seeks money damages; he alleges personal

injury; he alleges that Captain Rakowski engaged in wrongful acts; and that Captain Rakowski

acted within the scope of his employment. (ECF No. 17.) The Court will next turn to whether the

final element—whether the Defendant would be liable if he were a private actor—is satisfied,

before turning to whether the claim must nevertheless be dismissed because of the discretionary

function exception.

### 2. Merits

Defendants argue that Plaintiff failed to adequately allege assault or battery because he

fails to allege a "harmful or offensive physical contact, or apprehension of the same." (ECF No.

26-1 at 19.) This argument is unavailing.

Under Maryland law, "[a]n assault is any unlawful attempt to cause a harmful or offensive

contact with the person of another or to cause an apprehension of such a contact." *Smallwood v.*

*Kamberger*, No. 3067, 2020 WL 4049719, at \*25 (Md. Ct. Spec. App. July 20, 2020) (quoting

*Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Sp. App. 1982). For the

"apprehension" element to be satisfied, the plaintiff need not be in fear; the plaintiff need only

have a "reasonable apprehension of an impending battery." *Lamb v. State*, 613 A.2d 402, 437–38

(Md. Ct. Sp. App. 1992). Here, viewing the facts in the light most favorable to Plaintiff and making

all reasonable inferences in his favor, the Court concludes that Plaintiff's allegation that Captain

Rakowski "clenched his fists, stepped toward plaintiff and swung" suffices to establish that

Plaintiff reasonably apprehended that he would be imminently struck by Captain Rakowski. Thus,

Plaintiff has adequately stated a claim for assault.

Likewise, the Court concludes that Plaintiff has plausibly alleged battery. Under Maryland

law, "[a] battery occurs when one intends a harmful or offensive contact with another without that

person's consent." *Nelson v. Carroll*, 355 A.2d 1096, 1100 (Md. 1999) (citing Restatement

(Second) of Torts § 13 & cmt. d (1965)). Plaintiff alleges that Captain Rakowski pushed his head and pulled his hair, which are clearly harmful or offensive contacts with Plaintiff's person, *see Nelson,* 355 Md. 593, 601 (concluding that the act of striking another on the head was "unquestionably" a harmful or offensive contact); and the Court can easily infer, when viewing the facts in the light most favorable to Plaintiff, that Captain Rakowski's actions were intentional and undertaken without Plaintiff's consent. Thus, Plaintiff has plausibly pleaded the prima facie elements of battery.

### 3. *Discretionary function exception*

Because the Court determines that Plaintiff has plausibly alleged that Captain Rakowski has committed a tort for which he could be liable under Maryland law if he were a private citizen, the Court must consider whether the FTCA's discretionary function exemption applies. In *Kaufman v. United States,* a case with some similar factual allegations, the plaintiff brought FTCA claims against the United States for an alleged assault and battery committed against her by a corrections officer while she was incarcerated. 84 F. Supp. 3d 519 (S.D. W. Va. 2015). In that case, the plaintiff made a sarcastic comment to the officer and refused to follow his orders. The parties then got into a physical altercation during which the plaintiff sustained physical injuries. The plaintiff alleged that the officer slammed her into a wall and otherwise used excessive force, accusations that the officer denied. *Id.* at 522–24. After a bench trial, the court dismissed the plaintiff's claim, holding that it lacked subject matter jurisdiction because of the FTCA's discretionary function exception. *Id.* at 530. The court found that the first part of the discretionary function test was satisfied because there was "an element of judgment or choice" in the defendant's actions under BOP regulations providing officers with discretion to use an appropriate amount of force to ensure the safety of inmates and enforce "institute security and good order." *Id.* at 528

(citing 28 C.F.R. 552.20). The court found that the second prong was satisfied because there were public policy considerations in deciding how an officer should appropriately respond to inmate disobedience. *Id.* at 59. The Fourth Circuit affirmed by unpublished opinion. *Kaufman v. United States*, 601 Fed. App'x 237 (Mem.) (4th Cir. 2015).

The Court finds *Kaufman* distinguishable from the facts at issue in this case, at least at this procedural posture and on the record before it. In *Kaufman*, the court, sitting as the trier of fact in a bench trial, found that the plaintiff had in fact violated prison rules before the altercation, thus implicating the officer's discretion in deciding how to respond. 84 F. Supp. 3d at 519. By contrast, a genuine dispute exists here as to whether (per Plaintiff) Captain Rakowski attacked Plaintiff in retaliation for filing grievances, or whether (per Defendants) Captain Rakowski used reasonable force to maintain order after he observed Plaintiff violating multiple BOP rules. (*See* ECF No. 26-3 at 3.) The Court cannot resolve this dispute in Defendants' favor at summary judgment.

Prisoners have a constitutional "right to file a prison grievance free from retaliation." *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 545 (4th Cir. 2017). And "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." *Medina*, 259 F.3d at 225 (alteration in original) (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)). On the record before it, the Court cannot conclude whether Captain Rakowski's actions on February 3, 2022 comprised unlawful retaliation or a legitimate exercise of authority. So, the Court finds that the first step of the *Berkovitz* test is not satisfied and concludes that the discretionary function exemption does not deprive the Court of subject matter jurisdiction at this stage of the litigation. *See Annappareddy v. Lating*, Civ. No. 1:18-03012, 2023 WL 2540306, at *11 (D. Md. Mar. 16, 2023) (finding that the discretionary function exception was not available when the plaintiff plausibly alleged malicious intent).

21

#### 4. *Conclusion*

The Court finds that Plaintiff has plausibly alleged all six essential elements of an FTCA claim, and that Plaintiff has plausibly alleged facts that—if true—would defeat the discretionary function exception. Because these allegations are in the form of a verified complaint based on personal knowledge, Plaintiff has provided the functional equivalent of affidavit testimony sufficient to create a genuine dispute as to whether he was the victim of an assault and battery. Accordingly, the Court will deny the United States' Dispositive Motion as it pertains to the assault and battery claims.

### E. Negligence

Plaintiff alleges that Captain Rakowski's "actions in purposely and unreasonably exposing plaintiff to Covid-19 by refusing to allow plaintiff to don his mask, refusing to allow plaintiff to mask in plaintiff's cell, and negligently exposing plaintiff to Covid-19 by placing him in the SHU in a Covid-19 positive tier as described in the complaint constitutes both the tort of negligence and a violation of plaintiff's Eighth Amendment rights." (ECF No. 17 at 5.)

For the reasons articulated in the Court's discussion of res judicata, *supra*, the Court will stay proceedings insofar as the Complaint challenges Plaintiff's conditions of confinement related to COVID-19 and deny without prejudice the United States' Dispositive Motion pertaining to these claims under the FTCA.

### F. Malicious Prosecution

#### 1. *Factual Background*

Plaintiff alleges that, on February 3, 2022, Captain Rakowski threatened to "give [Plaintiff] about seventy write-ups" in retaliation for Plaintiff filing several complaints and grievances about prison conditions. Plaintiff alleges that Captain Rakowski then filed an incident report, No.

3593120, based on fabricated evidence. Plaintiff alleges that he was cleared of the charges in this incident report by a disciplinary committee. (ECF No. 17 at 2–4.)

Plaintiff alleges that Captain Rakowski later created a second incident report, No. 3593121, in which he falsely stated that Plaintiff's cell was untidy in violation of prison rules. This incident report, according to Plaintiff, led to him being placed in the SHU. The report also claimed that Plaintiff engaged in a prohibited "group demonstration." This incident report, which Plaintiff alleges was based on "fabricated evidence," resulted in a disciplinary proceeding and loss of good time credits. (*Id.* at 3–4.) Plaintiff alleges that Captain Rakowski's "actions in maliciously falsifying information" in these two incident reports "constitute[] the tort of malicious prosecution." (ECF No. 17 at 5.)

### 2. *Legal Standard*

> The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff.

*Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000).

### 3. *Analysis*

Plaintiff's malicious prosecution claim as it relates to Incident No. 3593121 is facially deficient because Captain Rakowski's charges were, by Plaintiff's own admission, sustained at a disciplinary hearing. Thus, Plaintiff cannot show that this charge led to a "termination . . . in [his] favor," an essential element for a malicious prosecution claim. *Heron*, 761 A.2d at 59. Even if Incident No. 3593121 was indeed based on fabricated evidence, a claim for malicious prosecution is not available.

Plaintiff's claim regarding Incident No. 3593120 fails because a prison disciplinary proceeding is not a criminal proceeding. As Defendants note, the Supreme Court has stated that

"[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Even when a prisoner faces the loss of good time credits as a result of a prison disciplinary proceeding, the prisoner—while entitled to certain due process rights—does not enjoy the full protections of a criminal trial. *Tyler v. Hooks*, 945 F.3d 159, 168 (4th Cir. 2019). The parties have not identified, nor has the Court found, any case in which the Maryland courts have squarely addressed the question of whether, as a matter of state law, prison disciplinary proceedings constitute a "criminal proceeding." But the Maryland's highest court has "long recognized that '[s]uits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against.'" *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 955 (Md. 1997) (alteration in original) (quoting *N. Pt. Constr. Co. v. Sagner*, 44 A.2d 441, 444 (Md. 1945)). Following this admonition, Maryland courts have construed "criminal proceeding" strictly in other circumstances. *See Kerpelman v. Bricker*, 329 A.2d 423, 427–28 (Md. Ct. Spec. App. 1974) (holding that "[a] disciplinary proceeding for professional misconduct is not a proceeding of a criminal character which is the first essential element of a cause of action for malicious prosecution"). And district courts in other jurisdictions, applying similar elements for malicious prosecution, have concluded that a prison disciplinary proceeding cannot form the basis of a malicious prosecution claim because it is not criminal in nature. *See Rashid v. United States*, No. CV 20-5947 (RMB-KMW), 2021 WL 1382358, at *3 (D.N.J. Apr. 13, 2021) ("[A] prison disciplinary infraction cannot form the basis for a malicious prosecution claim."); *German v. Brown*, No. CIVA 804-22900-26BI, 2005 WL 4783123, at *3 (D.S.C. Apr. 21, 2005) (noting that it "is, to say the least, subject to doubt" whether a prison disciplinary proceeding could form the basis for a malicious prosecution claim); *Greer v. DeRobertis*, 568 F. Supp. 1370, 1376 (N.D. Ill.

24

1983) (holding, as a matter of Illinois law, that the tort of malicious prosecution does not extend to prison disciplinary proceedings).

Plaintiff's malicious prosecution claim does not survive even if the Court construes it as one for malicious use of process. To state a claim for malicious use of process, the plaintiff must allege: 1) a prior civil proceeding instituted by the defendant; 2) brought without probable cause; 3) brought with malice; 4) the proceeding was terminated in plaintiff's favor; and 5) the plaintiff was arrested, imprisoned, or otherwise suffered special damages. *One Thousand Fleet*, 694 A.2d at 956 (Md. 1997). These damages must be of the kind that would not "ordinary result from proceedings for similar causes of action." *Id.* at 959. Even assuming *arguendo* that a prison disciplinary charge could constitute a "civil proceeding" for the purposes of this tort, Plaintiff's claim still fails. For Incident No. 3593121, the proceeding was not terminated in his favor. For Incident No. 3593120, Plaintiff does not allege that this charge caused him any special damages that would not ordinarily result from such disciplinary proceedings. So the claim must be dismissed. *See Sibley v. CarMax, Inc.*, No. 3369, 2020 WL 4050294, at *14 (Md. Ct. Spec. App. Jul. 20, 2020) (dismissing a malicious use of process claim because plaintiff failed to allege damages beyond those that would ordinarily be expected to occur).

Because Plaintiff has failed to show that he is entitled to relief under Maryland law, he has both failed to state a claim and failed to plead facts that would establish this Court's subject matter jurisdiction. For these reasons, the Court will dismiss Plaintiff's malicious prosecution claims.[7]

---

[7] The Court does not address whether it also would lack subject matter jurisdiction over the malicious prosecution claims because of the FTCA's discretionary function exception. *See Medina*, 259 F.3d at 229 (holding that a malicious prosecution claim under the FTCA was barred by the discretionary function exception); *but see Annappareddy*, 2023 WL 2540306, at *11 (finding the exception unavailable when the plaintiff alleged "deliberate, or at least reckless, attempts to fabricate evidence"). Normally the Court must address subject matter jurisdiction before resolving the merits of a claim. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1998). However, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. at 749. Thus, the Court "can decide an element of an FTCA claim on the merits if that element is also jurisdictional"—even when that claim might also be subject to dismissal because of the discretionary function exception—because in the FTCA context

## VII. *Bivens* Claims

In the Amended Complaint, Plaintiff brings claims against Captain Rakowski under *Bivens* alleging violations of his Eighth Amendment rights related to four instances: (1) when Captain Rakowski seized Plaintiff's contact lenses and refused to return them to him; (2) when Captain Rakowski seized Plaintiff's prescription medication and refused to return it to him; (3) when Captain Rakowski exposed Plaintiff to the risk of contracting COVID-19; and (4) when Captain Rakowski struck plaintiff in the head. (ECF No. 17 at 5.)

### A. Exhaustion

#### 1. *Background*

In their Dispositive Motion, Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. (ECF No. 26-1 at 9.) To assert a *Bivens* claim in federal court, inmates are first required to exhaust all inmate grievance procedures. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). If Plaintiff's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. *Porter*, 534 U.S. at 524 (explaining that *Bivens* suits are subject to the PLRA's exhaustion requirements).

#### 2. *Legal Standard*

The PLRA provides that a prisoner cannot bring a claim "with respect to prison conditions under section 1983 of this title, or any other federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[P]rison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 34 U.S. 516 at 532.

---

"pleading a claim and pleading jurisdiction entirely overlap." *Id.* at 749–50.

The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this Court will hear the claim. *See Ross v. Blake*, 578 U.S. 632, 639 (2016); *Jones*, 49 U.S. at 215–16. To properly exhaust his claim, Plaintiff must use "all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The BOP has an Administrative Remedy Program for inmates to resolve concerns related to their confinement. *See* 28 C.F.R. § 542.10 *et seq.* Inmates must first attempt informal resolution with staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint using the appropriate form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *Id.* An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. *See Woodford*, 548 U.S. at 90.

Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d

27

1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225). To determine whether relief was effectively unavailable, the Court must determine whether there were "procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). This inquiry necessary involves a consideration of the "facts on the ground" at the prison. *Id.* at 643. For instance, a remedy is not available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

### 3. *Analysis*

Plaintiff claims that he was prevented from accessing the BOP's administrative remedies because he was unable to get the necessary forms for filing a grievance while he was in the SHU. (ECF No. 17 at 5.) In particular, Plaintiff alleges that "[a]t FCI Cumberland there is an unwritten policy not to provide inmates with grievance forms while in the SHU to prevent complaints." (*Id.* at 4.) Plaintiff states that he was able to access a form for filing an FTCA claim, but that the forms for filing "Bivens/constitutional claims" were unavailable to him. (*Id.* at 5.).

Defendants cite to a Western District of Virginia case, which held that "temporary obstacles that prevent the submission of a timely grievance—such as a lockdown, transfer, or a refusal by prison officials to provide the necessary forms—do not make administrative remedies unavailable where prisoners may 'request consideration of untimely grievances for good cause.'" *Hood v. Bureau of Prisons*, 2023 WL 361872, at *7 (W.D. Va. Jan. 20, 2023). In *Hood*, the

28

plaintiff alleged that prison officials refused to grant him access to necessary forms while he was in the SHU. Nevertheless, the court found that plaintiff failed to exhaust all available remedies because BOP regulations provide that a prisoner may request consideration of an untimely grievance for a "valid reason." *Id.* (citing 28 C.F.R. § 542.14(b)).[8]

The Court declines to follow the reasoning in *Hood*. The mere possibility that an inmate might find a way to submit a grievance despite prison officials' steps to thwart him does not mean that "the inmate is obliged to find some novel way around those obstacles." *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021). For instance, in *Hill v Haynes*, the plaintiff argued that no administrative remedies were available to him because prison officials either refused to give him the necessary forms while he was in the SHU, or refused to process his complaints. 380 Fed. App'x 268, 273 (4th Cir. 2010). The Fourth Circuit held that there remained "genuine issues of material fact as to whether Defendants hindered his ability to exhaust administrative remedies." *Id. Neale v. Hogan* is also instructive. No. 21-7287, 2022 WL 12325186 (4th Cir. Oct. 21, 2022). There, the plaintiff claimed that "officers failed to provide [administrative remedy] forms to inmates in his housing unit." *Id.* at *1. The defendants countered the plaintiff's contention by submitting evidence showing that other inmates in the plaintiff's unit had successfully submitted complaint forms during the relevant period. *Id.* The Fourth Circuit held that the district court erred in dismissing the plaintiff's complaint for failure to exhaust, because there was "an issue of fact" as to whether the forms were available to plaintiff. *Id.* at 2.

Finally, the fact that Plaintiff was able to file complaints after his transfer from FCI Cumberland does not conclusively show that an administrative remedy for his *Bivens* claim was

---

[8] The Fourth Circuit affirmed on unrelated grounds but noted that it did not address "the exhaustion findings that served as the basis for the district court's disposition of the majority of [the appellant's] claims" because the appellant did not raise the issue in his appellate brief. *Hood v. Dep't of Prisons*, No. 23-6114, 2023 WL 5561319 (4th Cir. Aug 29, 2023).

available. As the court in *Neale* stated, the fact that a plaintiff submitted complaints *after* the period during which he was allegedly prevented from doing so—when viewed in the light most favorable to the plaintiff—may "perhaps *bolster*[] his argument that the [administrative complaint form] was unavailable to him before filing his complaint." *Neale*, 2022 WL 12325186, at \*2 (second emphasis added).[9]

On the record before it, the Court cannot conclude whether the grievance system at FCI Cumberland was in fact "available" to Plaintiff while he was in the SHU. Significant factual questions remain about whether Plaintiff was prevented from accessing the appropriate administrative grievance forms, whether Plaintiff could have filed an administrative complaint without using such forms, and whether the BOP would have entertained a request to consider an untimely complaint under 28 C.F.R. § 542.14(b). *Cf. Griffin v. Bryant*, 56 F.4th 328, 338 (4th Cir. 2022) (holding that "the record leaves too much to speculation" to determine whether, as a matter of law, a prison administrative remedy process was available to a plaintiff). Thus, the Court will not grant summary judgment to Defendants on the exhaustion question.

Having concluded that a genuine dispute remains as to whether Plaintiff exhausted his administrative remedies, the Court will turn to the merits of Plaintiff's *Bivens* claims.

## B. Legal standard

42 U.S.C. § 1983 authorizes plaintiffs to bring an action for money damages against state and local government officials who, while acting "under color of state law," violated the plaintiffs' constitutional rights. However, there is no statutory counterpart under which plaintiffs can sue federal officials for constitutional violations. *Bivens* provides the federal analog to § 1983 claims.

---

[9] Defendants do not raise this argument, but the Court pauses to observe that the fact that Plaintiff may have filed an FTCA grievance form during the relevant period does not necessarily mean that another type of grievance form must also have been available. *See Moss* 19 F.4th at 622. In *Moss*, the Fourth Circuit rejected a plaintiff's argument that grievance forms were unavailable to him because the undisputed evidence showed that, during the relevant time period, he had submitted multiple grievance forms of the same type as the one he claimed he was unable to submit. *Id.* at 622. The court noted that its conclusion would have been different if there were evidence indicating the plaintiff was able to submit one type of grievance but not another. *Id.* Here, Plaintiff has provided evidence that the BOP provided him access to FTCA forms but not *Bivens* forms. (ECF No. 17 at 5.)

*Bulger v. Hurwitz*, 62 F.4th 127, 135 (4th Cir. 2023). In *Bivens*, the Supreme Court found an implied cause of action under the Fourth Amendment for plaintiffs to sue federal officials for money damages arising from unreasonable searches and seizures. *Id.* at 135–36 (citing *Bivens*, 403 U.S. at 396–97). The Supreme Court subsequently extended *Bivens* to two additional scenarios: In *Davis v. Passman*, 442 U.S. 228 (1979) the Court found an implied right of action for a former congressional employee to sue a congressman for sex discrimination in violation of the Fifth Amendment. And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that an inmate had a cause of action under the Eighth Amendment to bring a suit for money damages for deliberate indifference to his serious medical needs.

"[I]n the 43 years since *Carlson*, the Court has 'consistently rebuffed' requests to expand implied *Bivens* actions." *Bulger*, 62 F.4th at 136 (quoting *Hernandez v. Mesa*, 589 U.S. ___, 140 S. Ct. 735, 743 (2020)). The Supreme Court now considers the recognition of constitutional causes of action to be within the province of the legislative, rather than judicial branch; therefore, "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. ___, 142 S. Ct. 1793, 1803 (2022) (quoting *Hernandez*, 140 S. Ct. at 742–43). The Supreme Court has not overruled its three *Bivens* cases, but it has "severely limit[ed] the reach of *Bivens* by imposing a highly restrictive two step analysis for *Bivens* cases." *Bulger*, 62 F.4th at 136–37. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

First, the Court must ask whether the claim arises in a new context or involves a new category of defendants" from the three original *Bivens* cases. *Id.* at 137 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135). "A context is 'new' when it is 'different in a meaningful way from previous Bivens cases decided by [the] Court." *Id.* (quoting *Ziglar*, 582 U.S. at 139). Although the Supreme

31

Court has conceded that "some differences . . . will be so trivial that they will not suffice to create a new *Bivens* context," *Ziglar*, 589 U.S. at 149, a case may arise in a new context "if *even one* distinguishing fact has the potential to implicate separation-of-powers concerns." *Bulger*, 62 F.4th at 138 (emphasis in original) (quoting *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022)).

Second, if the Court finds that the claim arises in a new context, the Court must "ask whether there are any special factors that counsel hesitation about granting the extension" of *Bivens* to the new context. *Id.* at 137 (quoting *Hernandez*, 140 S. Ct. at 743). "This 'special factors' inquiry must focus on 'separation-of-powers principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." *Id.* (quoting *Hernandez*, 140 S. Ct. at 743)). An important special factor to consider is whether "there is an alternative remedial structure present in a certain case." *Id.* at 140 (quoting *Ziglar*, 147 S. Ct. at 1858. "An alternative remedy weighs against recognizing a new *Bivens* claim even if it is less effective than the damages that would be available under Bivens and is not expressly identified by Congress as an alternative remedy." *Dyer v. Smith*, 56 F.4th 271, 279 (4th Cir. 2022).

### C. Claims Relating to Plaintiff's Medications and Contact Lenses

#### 1. *Background*

Plaintiff alleges that Captain Rakowski's actions in denying him access to his prescription medication and to his contact lenses constitute deliberate indifference in violation of the Eighth Amendment. (ECF No. 17.) The most closely analogous *Bivens* case to Plaintiff's claim is *Carlson v. Green*, in which the Court entertained a damages remedy for deliberate indifference to an inmate's urgent medical crisis that ultimately resulted in the inmate's death. *See* 446 U.S. at 16 & n.1. Assuming, without deciding, that Plaintiff's allegations are similar enough to those in *Carlson* so as not to present a "new context" for the purposes of recognizing a new *Bivens* claim,

32

Plaintiff nevertheless fails to adequately allege deliberate indifference. *See Parker v. Moubarek*, Civ. No. 01096-LKG, 2023 WL 4745601, at *3 (D. Md. July 24, 2023) (taking a similar approach to a *Bivens* claim alleging deliberate indifference under *Carlson*).

### 2. *Legal Standard*

"[A] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). To state a claim for deliberate indifference to medical needs under the Eighth Amendment, the plaintiff must allege (1) that the plaintiff suffers an objectively serious medical condition; and (2) that the prison official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178. "A medical condition is objectively serious when it either is 'diagnosed by a physician as mandating treatment' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). The subjective knowledge test requires a showing "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Scinto*, 841 F.3d at 225 (quoting *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)).

### 3. *Analysis*

Plaintiff states that, while in the SHU, he suffered "severe headaches" because of the lack of prescription contact lenses, and "acute depression" because of the lack of his prescription depression medication. (ECF No. 17 at 3–4.) Assuming without deciding that these medical conditions are objectively serious, Plaintiff does not allege that Captain Rakowski knew of the

risks to Plaintiff's health posed by his actions or inactions. Plaintiff alleges that Captain Rakowski packed all of Plaintiff's belongings, including his contact lenses and medicine, when he moved Plaintiff from his cell to the SHU. (ECF No. 17 at 3.) Plaintiff further alleges that after he arrived in the SHU, he asked SHU staff for his medicine and contacts but that another officer told Plaintiff that Captain Rakowski "never gave the SHU officers plaintiff's medications" or the contact lenses "that [he] seized from plaintiff's cell." (*Id.*) But notably, Plaintiff never alleges that Captain Rakowski subjectively knew, or even recklessly disregarded, that Plaintiff did not receive his medication or contacts in the SHU after Captain Rakowski had collected them from him. (*See generally* ECF No. 17.) According to Captain Rakowski's unrebutted affidavit, prison policy provides that, when an inmate is moved to the SHU, all of his prescription medication is collected and "given to Health Services where it is then redistributed as necessary in the SHU." (ECF No. 26-3 at 4). Further, Captain Rakowski avers that he "do[es] not provide inmates with their medication because [he is] not a medical provider." (*Id.*)

Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff has pleaded facts that may tend to show Captain Rakowski was negligent, perhaps grossly so, in failing to ensure that Plaintiff's contact lenses and medications were provided to Health Services. But this is not enough to show *both* that Rakowski had "knowledge of the inmate's serious medical condition" *and* that he knew of "the excessive risk posed by" his action. *Jackson*, 775 F.3d at 178. It is not enough to show that Captain Rakowski "*should* have known of a risk." *Formica v. Taylor*, 739 Fed. App'x 745, 755 (4th Cir. 2018) (emphasis in original) (quoting *Jackson*, 775 F.3d at 178). Thus, Plaintiff failed to meet the "exacting" standard for meeting the subjective prong of the deliberate indifference inquiry. *Jackson*, 775 F.3d at 178. (explaining that for deliberate indifference there "is a higher standard for culpability than mere negligence or even

34

civil recklessness"); *see also Langford v. Joyner*, 62 F.4th 122, 125–27 (4th Cir. 2023) (explaining that the plaintiff must allege that the specific named defendant had actual knowledge to satisfy the subjective test for deliberate indifference). For this reason, the Court will grant summary judgment to Captain Rakowski on Plaintiff's deliberate indifference claims under *Bivens* and *Carlson*.

### D. COVID-19-related claims

As the Court explained above in its discussion of res judicata and Plaintiff's COVID-related claims, *supra*, the Court will stay proceedings to the extent that they relate to these claims in light of the pending motion to dismiss in *Head II*. Accordingly, the Court will deny without prejudice Defendants' Motion as it pertains to Plaintiff's *Bivens* claims relating to his alleged unreasonable exposure to COVID-19.

### E. Battery

Plaintiff claims that the alleged battery committed by Captain Rakowski constitutes cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 17.) The Court will grant summary judgment to Defendants on this claim.

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments. U.S. Const. amend. XIII. It is unacceptable and unconstitutional for prison officials to inflict gratuitous violence against inmates. *See Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) ("Being assaulted in prison is not 'part of the penalty that criminal offenders pay for their offenses against society[.]'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). However, the question before the Court is not whether Plaintiff's allegations—if true—would form the basis for an Eighth Amendment violation, but whether the Court may entertain a damages remedy against Captain Rakowski under *Bivens* and its progeny. Because the

answer to that question is no, the Court will grant summary judgment to Captain Rakowski on this claim.

Neither *Bivens* nor its two successor cases recognized a claim for excessive force under the Eighth Amendment. Thus, the claim clearly arises in a new context for the purposes of the first step of the *Bivens* analysis. *See Ball v. Streeval*, ___ F. Supp. 3d ___, Civ. No. 7:20-cv-00558, 2023 WL 1930003, at *5 (D. Md. Feb. 8, 2023) (concluding that an excessive force claim against a corrections officer presented a new *Bivens* context). Applying the second step of the *Bivens* analysis, the existence of multiple alternative remedies for excessive force in prisons counsels against extending *Bivens* to claims of excessive force or battery. The Supreme Court has stated that "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 582 U.S. at 137). Here, there were two remedial alternatives potentially available to Plaintiff. He could file a grievance through the BOP's administrative remedy program. *See id.* at 1806 (explaining that this program obviates the need for a *Bivens* remedy).[10] And he could bring—and has brought in this very case—a claim against the United States under the FTCA for the alleged battery. *See Magnum v. United States*, Civ. No. PJM 06-1283, 2007 WL 9782531, at *2 (D. Md. Oct. 12, 2007) (declining to extend *Bivens* to a negligence claim because the FTCA provided a remedy); *Gray v. Plauger*, Civ. No. SAG-22-77, 2023 WL 2410852, at 6–7 (D. Md. Mar. 8, 2023) (declining to extend *Bivens* to an excessive force claim under the Eighth Amendment against a corrections officer because of the existence of alternative remedies). Because alternative remedial options were available to Plaintiff, the Court concludes

---

[10] Plaintiff alleges that he was prevented from filing a constitutional/*Bivens* claim relating to the alleged battery, but he *was*, allegedly, able to file an FTCA grievance regarding the alleged battery, as discussed in Part VI, *supra*.

that there is at least one special factor counselling hesitation about extending *Bivens* to this kind of claim.[11] Thus, the Court will grant summary judgment to Captain Rakowski on this claim.

## VIII.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 35) is denied. Defendants' Dispositive Motion (ECF No. 26) is granted in part and denied in part. For the sake of clarity, the Court will outline its rulings below:

1. Plaintiff's claims for injunctive and declaratory relief will be dismissed for lack of jurisdiction.

2. The Court will grant summary judgment to Defendants on Plaintiff's *Bivens* claims, except those related to his alleged exposure to COVID-19.

3. The Court will dismiss all FTCA claims against Captain Rakowski.

4. The Court will dismiss Plaintiff's claims for malicious prosecution under the FTCA.

5. The Court will deny the United States' Dispositive Motion as to Plaintiff's claims for assault and battery under the FTCA. Discovery on these claims will be limited to the issue of exhaustion until the Court orders otherwise.

6. The Court will deny without prejudice the Dispositive Motion as to Plaintiff's claims relating to COVID-19 under *Bivens* against Captain Rakowski and under the FTCA against the United States. Further proceedings on Plaintiff's COVID-19-related claims will be stayed until the Court orders otherwise. After Judge Chuang resolves the pending motion in *Head II*, Defendants may file a motion to lift the stay and move to dismiss or for summary judgment on Plaintiff's COVID-19-related claims.

---

[11] The Supreme Court has also suggested that Congress's decision "not [to] provide for a standalone damages remedy against federal jailers" when it enacted the PLRA is another factor counselling hesitation before recognizing a new *Bivens* damages remedy against federal correctional officers. *Ziglar*, 582 U.S. at 148–49.

In summary, Plaintiff's surviving claims are his claims against the United States alleging assault and battery under the FTCA (which will be allowed to proceed to limited discovery on the issue of exhaustion); and his claims relating to COVID-19 under *Bivens* against Captain Rakowski and under the FTCA against the United States (for which proceedings will be stayed until this Court orders otherwise). Because Plaintiff is incarcerated and cannot reasonably be expected to conduct discovery himself, the Court will appoint pro bono counsel to represent him.

A separate Order will issue.

DATED this 29 day of September, 2023.

BY THE COURT:

James K. Bredar
Chief Judge