IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLES HEAD** | * | |
| **Plaintiff,** | * | |
| v. | * | Civ. No. JKB-22-00566 |
| **CAPTAIN R. RAKOWSKI, JR.,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In this action, Plaintiff Charles Head alleges various violations of federal and state law related to his imprisonment at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). In September 2023, this Court issued an order that, *inter alia*, stayed Plaintiff's claims under the Federal Tort Claims Act ("FTCA") and *Bivens*[1] relating to his alleged exposure to COVID-19 at FCI Cumberland (the "COVID-19 claims"). (ECF No. 38.) That stay was instituted because Plaintiff had brought similar claims in a different case in this Court. Subsequently, in February 2024, Judge Hurson of this Court dismissed Plaintiff's COVID-19-related claims in that case. *Head v. United States*, Civ. No. 22-00239-BAH, 2024 WL 520037 (D. Md. Feb. 9, 2024) (*Head II*).

Now pending before the Court are: (1) Defendants' Motion to Lift Stay of COVID-19 Claims (ECF No. 58); and (2) Defendants' Motion to Dismiss COVID-19 Claims or, in the Alternative, for Summary Judgment (ECF No. 59), which the Court will construe as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Plaintiff's FTCA claim should be dismissed on the following grounds: (1) the claim is barred by

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

res judicata; (2) Plaintiff failed to administratively exhaust his claim; (3) the claim is barred by the discretionary function exception; and (4) the claim fails on the merits. (*See generally* ECF No. 59-1.) As to Plaintiff's *Bivens* claim, Defendants argue that it is foreclosed by 28 U.S.C. § 2676, the FTCA's judgment bar provision. (*Id.*)

Plaintiff has not filed an Opposition to either Motion, and the time for doing so has elapsed. *See* Local Rule 104.2(a). No hearing is necessary. *See id.* 105.6. The Court concludes that Plaintiff's FTCA claim is barred by the discretionary function exception, and that even if that exception did not apply, he fails to state a claim on the merits. The Court further concludes that his *Bivens* claim fails because of the FTCA's judgment bar.[2] Accordingly, both Motions will be granted: the stay on the COVID-19 claims will be lifted, and those claims will be dismissed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In the operative pleading (ECF No. 17), Plaintiff makes the following allegations concerning his COVID-19 claims.

Plaintiff suffers from several medical conditions that make him "extremely vulnerable" to COVID-19, including asthma, a heart valve condition, and a high body mass index. (Am. Comp. ¶ 8.) On February 3, 2022, Defendant Rakowski entered the C-1 Housing Unit in FCI Cumberland, where Plaintiff was incarcerated. (*Id.* ¶ 10.) The C-1 Unit "was considered a 'quarantine unit' due to another Covid-19 outbreak" at FCI Cumberland. (*Id.*) Rakowski "did not don any PPE [personal protective equipment] other than a blue surgical mask," despite signing a form upon entering the C-1 Unit indicating that he did don all required PPE. (*Id.*) "BOP policy required Rakowski to don all of the required PPE before entering plaintiff's housing unit as part of the BOP's Action Plan in effect on 2/3/22," which "included a gown, face shield, N-95 mask, and

---

[2] Because the Court determines that Plaintiff's claims must be dismissed on these grounds, the Court does not address Defendants' other arguments in favor of dismissal.

2

gloves." (*Id.* ¶ 11.)

At approximately 12:18 p.m. on February 3, 2022, Rakowski entered Plaintiff's cell, "took off his blue surgical mask" and threatened to "give [Plaintiff] about seventy write-ups." (*Id.* ¶ 15.) Plaintiff asked Rakowski to put on his mask to protect him from COVID infection, but Rakowski refused to do so. (*Id.* ¶ 16.) Plaintiff also asked if he could be permitted to put on a mask for himself, which Rakowski also refused. (*Id.*) Rakowski then allegedly assaulted Plaintiff. (*Id.* ¶¶ 16–17.)

Rakowski, who had "knowledge of Plaintiff's vulnerability to Covid-19," then sent Plaintiff to the Segregated Housing Unit (the "SHU"), "where he was housed in a location in the SHU that had several quarantined (Covid-19 positive) inmates quartered there." (*Id.* ¶ 20.) Plaintiff was held in the SHU for two months, during which time he "was moved from cell to cell each week and forced to occupy cells previously occupied by Covid-19 positive and quarantined inmates," all on Rakowski's orders. (*Id.*) In particular, "Plaintiff was forced to occupy cells in which Covid-19 positive inmates and Covid-19 exposed inmates had occupied without said cells being sanitized." (*Id.*) Plaintiff believes that Rakowski's "actions were meant to expose plaintiff to Covid-19 as a form of retaliation against plaintiff for his complaints in court and to the BOP via the administrative remedy process." (*Id.*)

Plaintiff alleges that he submitted a tort claim under the FTCA to the BOP's Mid-Atlantic Regional Office in March 2022. (*Id.* ¶ 33.) He alleges that six months passed without his receiving a response. (*Id.*) Plaintiff filed this suit *pro se* on March 9, 2022 (ECF No. 1), and filed an Amended Complaint (ECF No. 17) on October 25, 2022.

In September 2023, this Court granted in part and denied in part a dispositive motion filed by Defendants. (ECF Nos. 37, 38.) The Court dismissed Plaintiff's claims for injunctive and

3

declaratory relief and many of his *Bivens* and FTCA claims, with the exception of his FTCA claims for assault and battery.[3] And, as mentioned above, the Court stayed Plaintiff's COVID-19 claims under both *Bivens* and the FTCA. The Court also appointed counsel to represent Plaintiff in this matter. (ECF No. 42.)

## II. Legal Standards

### A. Standard for FTCA Claims

"The FTCA provides a limited waiver of sovereign immunity for civil actions against the United States." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016). To bring a claim under the FTCA, the plaintiff must allege that the claim is:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Brownback v. King*, 592 U.S. 209, 212 (2021) (alterations in original) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)) (quoting 28 U.S.C. § 1346(b)). All six elements are jurisdictional requirements that a plaintiff must plausibly allege both to state a claim and to establish subject matter jurisdiction. *Id.* at 217. To determine whether the sixth element is satisfied, the Court must look to state substantive law—here, Maryland law—to determine whether the defendant would be liable for the alleged conduct if the defendant had been a private individual at the time of the conduct. *See Pledger v. Lynch*, 5 F.4th 511, 522–523 (4th Cir. 2021).

The FTCA is "cabined by a list of exceptions," which, when applicable, "work to defeat the subject matter of the federal courts." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th

---

[3] The litigation on Plaintiff's FTCA claims for assault and battery is ongoing; this Memorandum does not address those claims.

Cir. 2020) (citing 28 U.S.C. § 2680). Relevant here is the discretionary function exception, which provides that there is no waiver of sovereign immunity for "[a]ny claim based upon an act or omission of an employee of the Government, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception "is to prevent 'judicial second-guessing' of decisions grounded in social and political policy." *Rich v. United States*, 158 F. Supp. 2d 619, 628 (D. Md. 2001) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

To determine whether the discretionary function exception applies, the Court must engage in a "two-step analysis." *Sanders v. United States*, 937 F.3d 316, 328 (4th Cir. 2019) (quotation omitted). First, the Court must determine whether "a federal statute, regulation, or policy specifically prescribes" the employee's course of action (in which case the "conduct cannot be discretionary") or whether the conduct "involves an element of judgment or choice" (in which case the conduct may be discretionary). *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, "[i]f the challenged conduct is the product of judgment or choice, this Court must then determine whether the decision made was based on considerations of public policy." *Sanders*, 937 F.3d at 328 (quotation omitted). The inquiry at this second stage focuses "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* (quoting *Gaubert*, 499 U.S. at 325). The discretionary function exception "shields decisions of a government entity made within the scope of any regulatory policy expressed in statute, regulation, or policy guidance, even when made negligently." *Id.* (quotation and alteration omitted).

5

## B. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

When the discretionary function exception to the FTCA applies, the Court "must dismiss the affected claims for lack of subject matter jurisdiction." *Indemnity Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). A party may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of proving subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court generally assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). But if the defendant argues that the jurisdictional facts alleged in the complaint are untrue, then "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.*

## C. Standard for Dismissal for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint's claims. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). However, conclusory allegations are not entitled to the assumption of truth, nor are legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). To survive a motion to dismiss, the complaint "must include 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Langford*, 62 F.4th at 124 (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

### A. Plaintiff's FTCA Claim

#### 1. *Discretionary Function Exception*

The Court concludes that Plaintiff's COVID-19 claim under the FTCA is barred by the discretionary function exception because the BOP has discretion in how it maintains the health and safety of inmates in its custody, and because decisions about where and how to house inmates implicate public policy considerations.

Turning to the first prong of the discretionary function analysis, Plaintiff alleges that: "BOP policy required Rakowski to don all of the required PPE before entering plaintiff's housing unit as part of the BOP's Action Plan in effect on 2/3/22," which "included a gown, face shield, N-95 mask, and gloves." (Am. Comp. ¶ 11.) Plaintiff does not explain what the "Action Plan" is that he refers to, so the Court will assume that the "Action Plan" is a reference to the BOP's COVID-19 Pandemic Response Plan, which is the only document that appears to match Plaintiff's description.[4]   *See* Bureau of Prisons, *COVID-19 Pandemic Response Plan* (2022), https://www.bop.gov/foia/docs/COVID_Pandemic_Response%20Plan_V.pdf. But that document does not purport to impose mandatory requirements on BOP officials. The document states that it "is designed to provide specific guidance on responding effectively to these challenges [*i.e.*, the challenges associated with COVID-19]—and limiting the spread of COVID 19, its impact on people's lives, and the BOP's missional and operational effectiveness." *Id.* at 3. Although the document occasionally uses the word "must," its overall tone is advisory rather than mandatory. *See, e.g., id.*, Module 1 at 4 ("All individuals participating in congregate activities *should not* be

---

[4] "A court may consider matters outside the pleadings in deciding whether it has jurisdiction." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 511 (D. Md. 2011) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

in quarantine or isolation status due to COVID-19." (emphasis in original)); *id.*, Module 2 at 6 (stating when "N-95 respirators should be used"). Other courts in this Circuit have reached the same conclusion. *See Johnson v. United States*, Civ. No. TDC-22-1647, 2023 WL 7635083, at *5 ("The Court therefore finds that the CDC Guidance and the BOP Response Plan did not impose mandatory requirements relating to the acts and omissions underlying Johnson's FTCA claims during the period of his incarceration. Rather, they provided only guidance that permitted BOP officials . . . to exercise discretion and judgment in deciding how specifically to address the COVID-19 pandemic."); *Bell v. United States*, Civ. No. 3:21-148, 2024 WL 2814699, at *6 (N.D.W. Va. Apr. 1, 2024) ("As to the Plaintiff's argument asserting the BOP's Pandemic Response Plan mandates specific action, the Court finds it does not."). As Judge Hurson stated in the *Head II* opinion, "none of the policies Plaintiff highlights 'expressly prescribe or proscribe a particular course of action.'" 2024 WL 520037, at *8 (quoting *Bulger v. Hurwitz*, 62 F.4th 127, 143 (4th Cir. 2023)). Accordingly, the first prong of the discretionary function exception is met.

Turning to the second prong, decisions about how to properly protect prisoners against COVID-19 infection in a manner consistent with the BOP's other responsibilities necessarily implicate questions of public policy. The BOP has broad discretion to determine how best to implement its statutory responsibility to provide for the "protection," "safekeeping," and "care" of persons in its custody. *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (citing 18 U.S.C. § 4042(A)(2), (3)). As the Fourth Circuit has explained, "[f]actors such as available resources, proper classification of inmates, and appropriate security levels are inherently grounded in social, political, and economic policy." *Id.* at 146 (quotation omitted). And as the Court in *Head II* stated, "[t]he actions taken by Defendants in managing BOP's COVID-19 response, including their medical assessment of Plaintiff and implementation of sanitation and social distancing, were

8

discretionary actions that fall under the FTCA's discretionary function exception." 2024 WL 520037, at *9 (collecting cases).

Finally, even if Plaintiff had adequately alleged that Defendants were negligent in failing to take adequate steps to protect him from COVID-19, that would not be enough to defeat the discretionary function exception. The Fourth Circuit has expressly held that the exception applies to discretionary governmental actions implicating public policy, "*even when made negligently.*" *Sanders*, 937 F.3d at 328 (emphasis added). Nor does it help Plaintiff that Rakowski's actions may have constituted an abuse of discretion, because the exception expressly applies to discretionary acts, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). And, it is of no moment that Captain Rakowski was a "low-level employee implementing policy" rather than "a high-level agency official making policy"; the discretionary function exception applies the same to both, so long as "nature of the conduct" implicates public policy concerns. *Wood v. United States*, 845 F.3d 123, 128–29 (4th Cir. 2017).

### 2. Merits

Even if Plaintiff's COVID-19 claim were not barred by the discretionary function exception, it must nevertheless be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff alleges that his exposure to COVID-19 constituted the tort of negligence. (Am. Comp. ¶ 39.) Under Maryland law, to establish a negligence claim, a plaintiff must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Wash. Metro. Area Trans. Auth. v. Seymour*, 874 A.2d 973, 976 (Md. 2005) (quotation omitted).

Here, assuming (without deciding) that Plaintiff has adequately alleged breach of duty, he

has failed to plead that he suffered an "actual injury or loss." There is no allegation in the Amended Complaint that Plaintiff ever actually contracted COVID-19. Nor does he allege any severe emotional distress or any other injury as a result of his exposure. The Court is not aware of any authority stating that mere exposure to COVID-19, without actually contracting it, can give rise to a negligence claim—other than, perhaps, a claim for negligent infliction of emotional distress, which is not cognizable under Maryland law. *See Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015) ("Maryland does not recognize an independent tort for negligent infliction of emotional distress" (quotation omitted)); *cf. Kantrow v. Celebrity Cruises, Inc.*, 533 F. Supp. 3d 1203, 1216–20 (S.D. Fla. 2021) (holding, as a matter of federal maritime law, that cruise ship passengers who were exposed to, but did not contract, COVID-19 failed to state a claim for negligence or negligent infliction of emotional distress).

Because Plaintiff fails to adequately allege an essential element of a negligence claim, his FTCA claim fails on the merits.

### B. Plaintiff's *Bivens* Claim

Under *Bivens* and its progeny, in certain limited instances a plaintiff may sue a federal official for violations of the United States Constitution. *See Bulger*, 62 F.4th at 135. However, a plaintiff who brings both an FTCA claim and a *Bivens* claim concerning the same underlying facts generally cannot proceed with the *Bivens* claim if his FTCA claim fails. That is the case because of the judgment bar provision of the FTCA, which provides that "[t]he judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. In general, a final determination that a court lacks subject matter jurisdiction over an FTCA claim is a "judgment" for the purpose of triggering the judgment

bar provision. *Brownback*, 592 U.S. at 218.[5]

Here, the facts underlying Plaintiff's *Bivens* claim and his FTCA claim entirely overlap. (*See* Am. Comp. ¶ 39 (stating that Defendant Rakowski's actions in exposing him to COVID-19 "constitutes both the tort of negligence and a violation of plaintiff's Eighth Amendment rights").) The Court has determined that the Court has no jurisdiction over his FTCA claim both because of the discretionary function exception and because it fails on the merits.[6] In these circumstances, the Court's determination that it lacks subject matter jurisdiction triggers the judgment bar, and his *Bivens* claim must be dismissed. *See Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009).

## IV. CONCLUSION

For the foregoing reasons, a separate order will issue granting both Defendants' Motion to Lift Stay of COVID-19 Claims (ECF No. 58) and Defendants' Motion to Dismiss COVID-19 Claims or, in the Alternative, for Summary Judgment (ECF No. 59).

DATED this 3 day of Sept., 2024.

BY THE COURT:

James K. Bredar
United States District Judge

---

[5] A court's determination that it lacks subject matter jurisdiction over an FTCA claim because of the discretionary function exception does not, on its own, trigger the judgment bar provision. *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016). However, here, the Court determines that the COVID-19 claim fails on the merits as well.

[6] Recall that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback*, 592 U.S. at 217. Thus, "where, as here, pleading a claim and pleading jurisdiction entirely overlap, a ruling that the court lacks subject-matter jurisdiction may simultaneously be a judgment on the merits that triggers the judgment bar." *Id.* at 218.