## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLES HEAD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. JKB-22-00566** |
| **CAPTAIN R. RAKOWSKI, JR.,** *et al.,* | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Plaintiff Charles Head initiated the above-captioned case on March 9, 2022, while incarcerated at the Federal Correctional Institution ("FCI") in Cumberland, Maryland. (ECF No. 1.) In the operative Amended Complaint, Plaintiff alleges that Defendant Captain R. Rakowski, Jr. and other officials at FCI Cumberland violated his constitutional rights under the First and Eighth Amendments and committed the torts of assault, battery, negligence, gross negligence, intentional infliction of emotional distress, and abuse of process. (ECF No. 92.) Plaintiff seeks to vindicate his rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2647 ("FTCA"), respectively. (*Id.*)

Now pending before the Court is Defendants United States of America and Captain R. Rakowski, Jr.'s Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 97.) The Motion has been fully briefed (*see* ECF Nos. 102, 107) and no hearing is required. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted in part and denied in part: Plaintiff's *Bivens* claims and his FTCA claims for intentional infliction of emotional

distress and abuse of process will be dismissed, but his FTCA claims for assault, battery, negligence, and gross negligence will proceed.

## I.    Background

Plaintiff's factual allegations concern events occurring at FCI Cumberland in February 2022. (*See generally* ECF No. 92.)  Plaintiff alleges that after he complained about the failure of prison staff to follow then-applicable policies and procedures concerning the ongoing COVID-19 pandemic, Defendant Rakowski and other staff retaliated against him for complaining.  (*Id.*)  They did so, Plaintiff alleges, through a number of different means, including pushing his head and pulling his hair, intentionally exposing him to COVID-19 despite knowing he was particularly susceptible to the virus, depriving him of his contact lenses and medication for several weeks, filing false disciplinary reports against him, and depriving him of access to grievance forms that were needed to address this misconduct.  (*Id.*)

The procedural history of this case is lengthy, and the Court will not recount it exhaustively herein.  The following, however, is relevant for present purposes.  Plaintiff's original Complaint was filed pro se on March 9, 2022, shortly after the February 2022 events alleged as described above.  (ECF No. 1.)  On October 25, 2022, Plaintiff filed an Amended Complaint, which alleged both FTCA claims and *Bivens* claims.  (ECF No. 17.)

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, and on September 29, 2023, the Court granted it in part and denied it in part.  (ECF No. 37.)  The Court made rulings in four categories.  First, the Court dismissed Defendant Rakowski as an individual defendant.  (*Id.* at 14.)  Second, the Court dismissed several of Plaintiff's claims: two FTCA claims for malicious prosecution, and three Eighth Amendment *Bivens* claims.  (*Id.* at 25, 35, 37.)  Third, the Court held that Plaintiff's FTCA claims for assault and battery could proceed against Defendant

United States. (*Id.* at 14, 22.) And fourth, the Court stayed Plaintiff's claims concerning COVID-19 exposure—an FTCA claim for negligence and an Eighth Amendment *Bivens* claim—pending final judgment in a separate case with overlapping allegations (*Head v. United States*, Civ. No. 22-00238 ("*Head II*")[1]). (*Id.* at 12–13.) In addition to these substantive rulings, the Court appointed pro bono counsel to represent Plaintiff. (ECF No. 38.)

On September 3, 2024, after *Head II* was dismissed, the Court lifted the stay of Plaintiff's COVID-19 claims and granted Defendants' motion to dismiss them. (ECF No. 65 at 9–11.) After this ruling, only Plaintiff's FTCA claims for assault and battery against the United States remained pending in this action.

At the Court's direction, the parties undertook limited discovery regarding the question of whether Plaintiff exhausted his administrative remedies on the assault and battery claims. (ECF Nos. 38, 44, 50.) While no comprehensive Scheduling Order was entered, the parties' status reports suggest that some amount of discovery concerning the merits of the assault and battery claims may have been conducted as well. (*See, e.g.*, ECF No. 53 ¶ 1 (reflecting discovery of video evidence); ECF No. 56 ¶ 1 (reflecting depositions).) Nevertheless, the Court subsequently stated that further discovery as to the merits of these claims may be necessary if a dispositive motion on the issue of exhaustion was not granted. (ECF No. 68.)

Defendants filed a dispositive motion on the exhaustion of the assault and battery claims (ECF No. 69), but before it was fully briefed, the parties jointly moved, on December 17, 2024, to consolidate this action with yet another overlapping case (*Head v. United States*, Civ. No. 23-02973 ("*Head IV*")). (ECF No. 76.) When the Motion to Consolidate was filed, a Motion to

---

[1] "*Head I*" (*Head v. Beard*, Civ. No. 22-00189) was a habeas petition challenging unrelated events alleged to have taken place in November 2020. This petition was dismissed in February 2023. 2023 WL 2023217, at *1 (D. Md. Feb. 13, 2023). The instant case, Civ. No. 22-00566, is "*Head III.*"

3

Dismiss or, in the Alternative, for Summary Judgment had been filed in *Head IV*, but not ruled on, and no discovery had been conducted.

The Court granted the Motion to Consolidate Cases, denied without prejudice all pending motions in either case, and ordered Plaintiff to file a new Amended Complaint limited to the allegations and claims from either case that had not been dismissed with prejudice or subject to an adverse summary judgment ruling. (ECF Nos. 79, 84.) That Amended Complaint (ECF No. 92) is now operative and pleads FTCA claims for assault, battery, negligence,[2] gross negligence, intentional infliction of emotional distress, and abuse of process against the United States, and First and Eighth[3] Amendment *Bivens* claims against Captain Rakowski.

Defendants filed, and the Court will consider herein, another Motion to Dismiss or, in the Alternative, for Summary Judgment, addressing the now-operative Amended Complaint. (ECF No. 97.) Defendants argue that Plaintiff's FTCA claims fail for a variety of reasons, including that Plaintiff failed to exhaust his administrative remedies; that the Court lacks jurisdiction pursuant to the discretionary function and/or quarantine exceptions to the FTCA's waiver of sovereign immunity; that Plaintiff has not plausibly pled essential elements of each claim; and that even if Plaintiff's pleadings had been adequate, the undisputed evidence establishes that Defendants'

---

[2] Plaintiff's pending FTCA negligence claim is based on different factual allegations than his previously dismissed FTCA negligence claim: the current claim is based on allegations concerning Plaintiff's contact lenses and medicine having been withheld (ECF No. 92 at 16), whereas the prior claim was based on allegations about exposure to COVID-19 (ECF No. 17 at 5). Thus, inclusion of this claim in Plaintiff's Amended Complaint does not violate the Court's instruction to limit the Amended Complaint to claims not already dismissed with prejudice or subject to an adverse summary judgment ruling.

[3] Plaintiff's pending Eighth Amendment *Bivens* claim *is* substantially the same as the previous Eighth Amendment *Bivens* claim on which the Court previously granted summary judgment. (*Compare* ECF No. 92 ¶ 61, *with* ECF No. 17 ¶ 40.) Thus, this claim does, on its face, violate the Court's order limiting the claims that may be included in the Amended Complaint. However, Plaintiff explains that he included this claim in the Amended Complaint in lieu of filing a motion for reconsideration in light of a subsequently decided Fourth Circuit case, *Fields v. Federal Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024), which the Court had held, before consolidating cases, "may become appropriate." (*See* ECF No. 102 at 38 n.12; ECF No. 68.) In any event, as is described further below, Plaintiff now withdraws his *Bivens* claim, abrogating any need for the Court to decide whether including this claim in the Amended Complaint was the appropriate means by which to seek reconsideration.

4

conduct was not tortious. (*Id.*) Defendants argue that Plaintiff's *Bivens* claims also fail for several reasons, including that Plaintiff failed to exhaust his administrative remedies; that because the FTCA claims fail, the FTCA's judgment bar precludes the *Bivens* claims; and that even if they are not barred, these claims are impermissible extensions of the *Bivens* doctrine. (*Id.*)

Plaintiff's response brief voluntarily withdraws his *Bivens* claims but defends his FTCA claims against Defendants' arguments. (ECF No. 102.) Defendants also filed a reply in support of their motion. (ECF No. 107.)

## II.    Legal Standards

Defendants seek dismissal pursuant to Rules 12(b)(1) and/or 12(b)(6), Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction and/or failure to state a claim upon which relief can be granted—or, in the alternative, pursuant to Rule 56, because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

### A.    Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Viewed through that lens, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). However, a plaintiff

5

need not include "detailed factual allegations," *Twombly*, 550 U.S. at 555, and federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## B.    Motions for Summary Judgment Under Rule 56 .

To prevail on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the movant must show that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In proving the presence or absence of a genuine dispute, either party may point to materials in the record, such as admissions, stipulations, depositions, documents, and electronically stored information. Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the movant meets this burden, then the nonmoving party cannot rest on mere denials but must point to specific facts showing there is a genuine triable issue in the case. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003). In determining whether a genuine dispute exists, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

6

### C. Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

The standard courts apply in evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) depends on the nature of the challenge. *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). Where the motion asserts that the allegations stated in the complaint, even if true, are insufficient to establish the Court's subject matter jurisdiction, then the Court assumes the truthfulness of the facts alleged and applies a standard patterned on Rule 12(b)(6). *Id.* If, on the other hand, the 12(b)(1) motion asserts that the jurisdictional facts alleged in the complaint are false, then the burden of proving subject matter jurisdiction is on the plaintiff and the Court is to regard the pleadings' allegations as mere evidence on the issue. *Id.* The Court then applies the summary judgment standard, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists, and the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

### D. Motions to Dismiss or, in the Alternative, for Summary Judgment Under Rule 12(d)

In evaluating a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), or in the alternative for summary judgment pursuant to Rule 56, Rule 12(d) applies. Fed. R. Civ. P. 12(d). Under Rule 12(d), if the Court, in ruling on the motion, considers materials outside the pleadings, then the motion must be construed as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent. A nonmoving party can show that she has *not* had a reasonable opportunity to present all pertinent material—and that the Court must disregard materials outside the pleadings and construe the motion as seeking dismissal under Rule 12(b)(6)—by filing a Rule 56(d) affidavit showing that

7

"for specified reasons," she "cannot present facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d). However, a Rule 56(d) request for discovery may be properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874–75 (4th Cir. 2019).

## III. Analysis

### A. *Bivens* Claims

Plaintiff "withdraws his two *Bivens* claims" in light of the Supreme Court's decision in *Goldey v. Fields*, 606 U.S. 942 (2025). (ECF No. 102 at 38.) As these were the only claims Plaintiff advanced against Defendant Rakowski, Plaintiff "consents to Captain Rakowski's dismissal as an individual defendant." (*Id.* at 38 n.2.) Accordingly, the Court will dismiss Plaintiff's *Bivens* claims and will dismiss Defendant Rakowski from this action.

### B. FTCA Claims

As the Court has previously explained:

"The FTCA provides a limited waiver of sovereign immunity for civil actions against the United States." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016). The statute "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). To bring a claim under the FTCA, the plaintiff must allege that the claim is:

"[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Brownback v. King*, 592 U.S. [209], 141 S. Ct. 740, 746 (2021) (alterations in original) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b))). All six elements are jurisdictional requirements that a plaintiff must plausibly allege

8

both to state a claim and to establish subject matter jurisdiction. *Id.* at 749. To determine whether the sixth element is satisfied, the Court must look to state substantive law to determine whether the defendant would be liable for the alleged conduct if the defendant had been a private individual at the time of the conduct. *See Pledger v. Lynch*, 5 F.4th 511, 522–523 (4th Cir. 2021).

(ECF No. 37 at 17.) Two of Plaintiff's FTCA claims—for abuse of process and intentional infliction of emotional distress—will be dismissed for failure to state a claim under Maryland law, and because this element of an FTCA claim is also jurisdictional, for failure to establish subject matter jurisdiction. Plaintiff's other FTCA claims—for negligence, gross negligence, assault, and battery—will proceed.

### 1. Abuse of Process

Plaintiff alleges that Defendant United States is liable for abuse of process because "Captain Rakowski willfully used the processes of FCI Cumberland to file false incident reports and complaints against Plaintiff . . . [which] caused Plaintiff to lose his good time credits . . . [and which] were submitted for the ulterior motive of retaliating against Plaintiff . . . ." (ECF No. 92 ¶ 60.) Defendant United States argues that this claim must be dismissed (1) because Plaintiff failed to exhaust his administrative remedies as to this claim, and/or (2) because Plaintiff's allegations are insufficient to state an abuse of process claim under Maryland law. (ECF No. 97-1 at 45.)

As the Court previously explained:

The FTCA "requires that before an action may be commenced in court, the claimant must 'present' his claim to the appropriate administrative agency for determination." *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (quoting 28 U.S.C. § 2675(a)). . . . "[T]he requirement of filing an administrative claim is jurisdictional and may not be waived." *Kokotis v. U.S. Postal Serv.*, 223 F. 3d 275, 278 (4th Cir. 2000) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)).

(ECF No. 37 at 14.) Plaintiff's administrative tort claim, dated May 26, 2023, and received on June 13, 2023 (ECF No. 97-2 at 180), satisfied the FTCA's presentment requirement, giving the government adequate notice to properly investigate the underlying incidents at issue in Plaintiff's

abuse of process claim and placing a sum certain on the claim's value. *See Kornegay v. United States*, 802 F. Supp. 3d 767, 787 (D. Md. 2025). "The FTCA was not intended as a trap for the 'unwary claimant,' and 'the purpose of 28 U.S.C. § 2675(a) is to provide notice to the relevant federal agency of claims, not to put up a barrier of technicalities to defeat their claims.'" *Starr v. United States*, 262 F. Supp. 2d 605, 607–08 (D. Md. 2003). Although Plaintiff's administrative claim alleged malicious prosecution rather than the distinct tort of abuse of process, *see One Thousand Fleet Ltd. v. Guerriero*, 694 A.2d 952, 956 (Md. 1997) (distinct torts), the FTCA does not require a claimant to enumerate any specific cause of action to give the government adequate notice to investigate, so long as the underlying incident is sufficiently well described. *See Neal v. United States*, 599 F. Supp. 3d 270, 312 (D. Md. 2022). The government had such notice here, and thus, the government's first argument fails.

However, the Court agrees with the government that Plaintiff has failed to state a claim for abuse of process. In Maryland, "[t]he tort of abuse of process occurs when a party has wilfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law." *One Thousand Fleet*, 694 A.2d at 956 (quoting *Krashes v. White*, 341 A.2d 798, 802 (Md. 1975)).

Whether Plaintiff has stated a claim for abuse of process here turns on whether the prison disciplinary proceedings Captain Rakowski initiated against him qualify as the relevant kind of "process"—a "criminal or civil process"—the abuse of which can be tortious under Maryland law. The Court has already held that prison disciplinary proceedings do not constitute criminal proceedings in the pertinent sense despite inmates' entitlement to certain due process rights. (ECF No. 37 at 24.) Similarly, the Court now finds that neither are such proceedings civil for purposes of this tort. Plaintiff's only argument to the contrary is that inmates are entitled to due process

10

protections during prison disciplinary proceedings, but just as this alone does not render such proceedings criminal in the pertinent sense, neither does it render them civil. Plaintiff does not cite, and the Court has not identified, any binding decision that squarely addresses this issue, but the Court is persuaded by district court decisions from other jurisdictions that support the view that prison disciplinary proceedings are not civil processes for purposes of this tort. *See, e.g., Carter v. Stith,* No. 3:22-cv-775, 2024 WL 477985, at \*21 (E.D. Va. Feb. 7, 2024) (stating that prison disciplinary proceedings "are not legal procedures enforced by a judicial authority covered by th[e] tort [of abuse of process]"); *Neil v. Wells Fargo Bank,* No. 1:13-CV-0644, 2015 WL 4459090, at \*4 (E.D. Va. July 20, 2015) ("'Process,' as used in [the tort of abuse of process], is synonymous with 'legal process' or 'judicial process,' and refers to a compulsory issuance by a court."); *Greer v. DeRobertis,* 568 F. Supp. 1370, 1376 (N.D. Ill. 1983) (holding in the context of a malicious prosecution claim, that the requirement of a "criminal or civil judicial proceeding" "cannot be relaxed to embrace prison disciplinary proceedings"). Therefore, the Court declines to extend the reach of this tort to cover prison disciplinary proceedings, and accordingly, Plaintiff's abuse of process claim will be dismissed.

### 2. Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant United States is liable for intentional infliction of emotional distress ("IIED") because:

> Captain Rakowski exposed Plaintiff to COVID-19 by failing to wear personal protective equipment; placing Plaintiff in cells occupied by inmates with COVID-19 or suspected of being exposed to COVID-19; and otherwise exposing or attempting to expose Plaintiff to COVID-19. Captain Rakowski did so knowingly and/or recklessly. Captain Rakowski knew that Plaintiff was previously ill with COVID-19, and that Plaintiff was particularly susceptible to serious illness if he contracted COVID-19 again. That was extreme and outrageous conduct that caused [Plaintiff] to fear he would contract COVID-19 and die given his comorbidities and health conditions. [Plaintiff] spent weeks in the SHU in severe emotional distress fearing that he would contract COVID-19 again and potentially die from the illness.

11

(ECF No. 92 ¶ 59.) Defendant United States argues that this claim must be dismissed because, *inter alia*, Plaintiff's allegations are insufficient to state an IIED claim under Maryland law. (ECF No. 97-1 at 44.) The Court agrees.

"[I]n order to prevail on a claim for IIED, a plaintiff must show that (1) the defendant's conduct was intentional or reckless; (2) her conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe." *Greene v. United States*, No. 21-cv-978-ELH, 2022 WL 911204, at *11–12 (D. Md. Mar. 29, 2022) (citations omitted). Claims for IIED are "disfavored, difficult to establish, and, as such, rarely viable." *Id.* (citations omitted). To satisfy the second element, "[t]he defendant's conduct must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community"—it "must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Id.* (citations omitted). Even "proof of a constitutional violation is not enough to establish extreme and outrageous conduct." *Annappareddy v. Lating*, No. 1:18-CV-03012-JFA, 2023 WL 2540306, at *17 (D. Md. Mar. 16, 2023). Further, as to the fourth element, "the balm of IIED recovery is to be reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* Mere emotional distress and mental anguish are not enough—rather, the emotional distress must be "severely disabling" and "so acute that no reasonable man could be expected to endure it." *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (citations omitted). Lacking allegations that the plaintiff was "treated by a physician for his mental anguish, . . . hospitalized because of a severely disabling emotional condition, that he lost sleep or weight, or that he was unable subsequently to live a normal life," for example, a plaintiff fails to state a claim. *Id.*

12

Defendants' alleged conduct—knowingly and/or recklessly attempting to expose Plaintiff to COVID-19 in retaliation for his having filed a grievance—is surely reprehensible. Nevertheless, the Court finds that it falls short of the high bar required for "extreme and outrageous" conduct made actionable through an IIED claim. Similarly, Plaintiff's alleged emotional distress—his "fear[] that he would contract COVID-19 again and potentially die"—may well be serious and regrettable, but it is nevertheless inadequate to state a claim for relief here. Thus, Plaintiff's IIED claim will be dismissed.[4]

### 3.    Assault and Battery

Plaintiff alleges that Defendant United States is liable for assault because "Captain Rakowski intentionally swung his fist toward Plaintiff with the intent to put Plaintiff in fear . . . [and] smashed items in Plaintiff's cell, [which] caused Plaintiff to fear and apprehend imminent harmful bodily contact" (ECF No. 92 ¶ 52), and for battery because "Captain Rakowski intentionally struck Plaintiff in the head and pulled on his dreadlocks without Plaintiff's consent and without any penological cause" (id. ¶ 51). Defendant United States argues that these claims fail (1) because they are barred by the discretionary function exception to the FTCA (ECF No. 97-1 at 22–28), (2) because the allegations are insufficient to state a claim under Maryland law (id. at 29–31), and/or (3) because the undisputed facts establish that Defendant's conduct was not tortious as a matter of law (id. at 31–33). The Court rejects all three arguments.

Turning first to the discretionary function exception, the Court has previously explained that this exception

---

[4] The Court declines to reach the government's alternative arguments that Plaintiff's IIED claim should be dismissed pursuant to the discretionary function exception and the quarantine exception to the FTCA. (See ECF No. 97-1 at 41–44.) While the Court recognizes that these arguments go to the Court's subject-matter jurisdiction, which is ordinarily addressed before evaluating the merits of a claim, in the unique context of the FTCA, where "pleading a claim and pleading jurisdiction entirely overlap," the Court can first decide an element of the FTCA claim on the merits, as it does here. *Brownback*, 592 U.S. at 217.

13

provides that there is no waiver of sovereign immunity [under the FTCA] for "[a]ny claim based upon an act or omission of an employee of the Government, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

. . .

To determine whether the discretionary function exception applies, the Court must engage in a "two-step analysis." *Sanders v. United States*, 937 F.3d 316, 328 (4th Cir. 2019) (quoting *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017)). First, the Court must determine whether "a statute, regulation, or policy specifically prescribes" the employee's course of action (in which case the "conduct cannot be discretionary") or whether the conduct "involves an element of judgment or choice" (in which case the conduct may be discretionary). *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, "[i]f the challenged conduct 'is the product of judgment or choice,' this Court must then 'determine whether the decision made was based on considerations of public policy.'" *Sanders*, 937 F.3d at 328 (quoting *Wood*, 845 F.3d at 128).

(ECF No. 37 at 17–18.) The government argues that because "Captain Rakowski's actions . . . involved an element of judgment or choice and were not subject to a mandatory directive" (ECF No. 97-1 at 25) and "were inherently grounded in policy considerations" (*id.* at 28), the discretionary function exception deprives the Court of jurisdiction over Plaintiff's assault and battery claims (*id.*).

The Court previously considered substantially the same argument in ruling on the government's pre-consolidation Motion to Dismiss or, in the Alternative, for Summary Judgment, and the Court rejected the argument then. (ECF No. 37 at 20–22.) The Court explained:

Prisoners have a constitutional "right to file a prison grievance free from retaliation." *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 545 (4th Cir. 2017). And "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes." *Medina*, 259 F.3d at 225 (alteration in original) (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)). On the record before it, the Court cannot conclude whether Captain Rakowski's actions on February 3, 2022 comprised unlawful retaliation or a legitimate exercise of authority. So, the Court finds that the first step of the *Berkovitz* test is not satisfied and concludes that the discretionary function exemption does not deprive the Court of subject matter jurisdiction at this stage of the litigation.

14

(*Id.* at 21.) The Court reaches the same conclusion here. To be sure, the record now before the Court is different than the record it evaluated previously. (*See* ECF No. 97-1 at 25 n.7.) But none of the record materials do away with the basic dispute over whether Captain Rakowski's actions were retaliatory. Even if Plaintiff concedes that a prison rule was violated in his cell and further witness statements concur, Plaintiff certainly does not concede that it was this violation that motivated Rakowski to swing his fist, strike his head, and pull his dreadlocks. Under *Booker* and *Medina*, Rakowski did not have discretion to take such actions if he did so in retaliation for Plaintiff's filing a grievance. Thus, the Court must first decide whether that was what Rakowski was doing before it can determine whether the discretionary function exception deprives the Court of jurisdiction.

The government urges that Plaintiff provides nothing more than a *theory* that Rakowski's conduct was retaliatory, as opposed to evidence sufficient to create a genuine dispute of fact, and the Court is sympathetic to this characterization—while Plaintiff's complaint provides *allegations* supporting an inference of retaliation (for example, Rakowski allegedly stated "If you want to write us up, then I'm gonna write you up" (ECF No. 92 ¶13)), Plaintiff's declarations (ECF Nos. 102-1, 102-2) do not repeat these assertions and constitute evidence thereof. Nevertheless, the Court finds that Plaintiff is entitled to at least conduct discovery as to Rakowski's intent and motivation, which he has plausibly pled. As he explains in his declaration, Plaintiff has not been afforded the opportunity to conduct discovery "as to [Captain Rakowski's] motive and intent to retaliate against me," (ECF No. 102-1 ¶ 20), and the Court finds that such discovery could create a genuine dispute of material fact sufficient to preclude summary judgment. Thus, while the Court may well grant the government's motion on this point if the record evidence remains unchanged after discovery, for now, the government's argument fails.

15

The government's second argument meets the same fate. Plaintiff's allegations are sufficient to state claims of assault and battery under Maryland law.

> Under Maryland law, "[a]n assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact." *Smallwood v. Kamberger*, No. 3067, 2020 WL 4049719, at *25 (Md. Ct. Spec. App. July 20, 2020) (quoting *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Sp. App. 1982)). . . . [And] "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 A.2d 1096, 1100 (Md. 1999) (citing Restatement (Second) of Torts § 13 & cmt. d (1965)).

(ECF No. 37 at 19.) As to the assault claim, the government contends that Plaintiff has not plausibly pled that that he, as opposed to his cell mate, apprehended a harmful or offensive contact when Captain Rakowski allegedly swung his fist. (ECF No. 97-1 at 30.) The Court disagrees. Plaintiff alleges that Captain Rakowski "stepped towards Plaintiff and swung his fist at Plaintiff, stopping his swing before his fist struck Plaintiff. Plaintiff believed and was afraid that Captain Rakowski was going to actually strike him and attempt to start a fight." (ECF No. 92 ¶ 16.) These allegations suffice.

As to the battery claim, the Court recognizes that "[a]n officer is not liable for battery for using a reasonable amount of force when effectuating a lawful detention or arrest." *Estate of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 169 (D. Md. 2023) (quoting *Nelson v. Carroll*, 355 A.2d 1096, 1100 (Md. 1999)). The Court also notes that the Amended Complaint uses varied language to describe some of the alleged conduct (alternately that Rakowski "poked" Plaintiff's head (ECF No. 92 ¶ 20) or "struck" it (*id.* ¶ 51)), and some of this language may describe nothing more than touching that is reasonably incidental to a lawful pat search. However, Plaintiff alleges that in addition to the "poking" and/or "striking" of his head, Rakowski "pulled on Plaintiff's dreadlocks, pushing Plaintiff's head toward the wall." (*Id.* ¶ 20.) Viewed as a whole and in the light that is most favorable to the Plaintiff, these allegations preclude dismissal.

16

Finally, the Court rejects the government's third argument, namely that even if the assault and battery claims are well pled, the undisputed evidence shows that Rakowski neither assaulted nor battered Plaintiff. In the face of Rule 56(d) and Plaintiff's declaration requesting further discovery (ECF No. 102-1 ¶ 20), the government fails to meet its high bar of establishing that the discovery Plaintiff requests could not create a genuine dispute of material fact. In addition to the discovery described above (going to Rakowski's "motive and intent to retaliate"), Plaintiff requests discovery from "inmate witnesses at FCI Cumberland who witnessed Captain Rakowski's actions on February 3, 2022, . . . about facts which dispute the declarations made by Captain Rakowski." (*Id.*) Such inmate testimony, along with Plaintiff's own statements, could create a genuine dispute of material fact as to the assault and battery claims, even in the face of the government's video and other evidence. Thus, Plaintiff's assault and battery claims will survive Defendants' motion.

### 4.    Negligence and Gross Negligence

Lastly, Plaintiff alleges that Defendant United States is liable for negligence and gross negligence because after "Captain Rakowski seized Plaintiff's prescribed contact lenses and depression medication" (ECF No. 92 ¶ 53) and placed him in segregated housing, "Health Services Administrator ["HSA"] Allison Foote [and] other employees . . . failed to respond to the daily requests Plaintiff made for his contact lenses and depression medication . . . for weeks . . . [which] caused [him] weeks of pain and suffering" (*id.* ¶¶ 54–55), including "severe headaches . . . because of the missing contact lenses [and] acute depression because of the missing depression medication" (*id.* ¶ 37). Plaintiff alleges that Defendant's conduct "was either undertaken to intentionally cause Plaintiff harm, or in utter indifference to his rights, wellbeing, and safety [as it was] aware of the importance of the medication and contact lenses." (*Id.* ¶ 58.) Defendant United States argues that these claims fail (1) because those pertaining to Captain Rakowski are barred by the doctrine of

17

res judicata (ECF No. 97-1 at 34–37), (2) because those pertaining to HSA Foote were not administratively exhausted (*id.* at 38–39), (3) because the allegations are insufficient to state a claim under Maryland law (*id.* at 37, 39–40), and/or (4) because the undisputed facts establish that Defendant's conduct was not tortious as a matter of law (*id.* at 40–41). The Court rejects all four arguments.

The doctrine of res judicata precludes litigants from asserting claims or issues that were already adjudicated. As the Court has previously explained:

> "The doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002).
>
> *Claim preclusion* will bar a suit in light of a prior judgment when (1) "the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process;" (2) "the parties are identical, or in privity, in the two actions;" and (3) "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding—i.e., the claims arise out of the same transaction or series of transactions, or the same core of operative facts." *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (internal quotation marks omitted) (quoting *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315–16 (4th Cir.1996)).
>
> A party seeking to rely on *issue preclusion* must show that (1) "the issue sought to be precluded is identical to one previously litigated"; (2) "the issue was actually determined in the prior proceeding"; (3) "the issue's determination was a critical and necessary part of the decision in the prior proceeding"; (4) "the prior judgment is final and valid"; and (5) "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum[.]" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (internal quotation marks omitted) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

The government argues that both claim and issue preclusion bar Plaintiff's negligence and gross negligence claims because "the Court [previously] entered summary judgment in favor of Captain Rakowski and against Plaintiff as to Plaintiff's *Bivens* claims against Captain Rakowski relating to Plaintiff's medications and contact lenses." (ECF No. 97-1 at 36–37.)

18

But as indicated above, both claim preclusion and issue preclusion require that the putatively preclusive decision was a "final judgment." No final judgment has been issued here. Rather, the putatively preclusive decision the government relies on is the Court's partial grant and partial denial of the government's pre-consolidation Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 37.) A partial grant of summary judgment is an interlocutory order, which the Court retains discretion to reconsider or modify at any time prior to final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). Thus, the decision does not have preclusive effect here.

Further, the government's issue preclusion argument fails for at least one additional reason, namely that the issue previously adjudicated is not "identical" to the issue at stake here. Whether Plaintiff previously satisfied pleading requirements for his Eighth Amendment *Bivens* claim, asserting deliberate indifference to his medical needs, is a different issue from whether he now satisfies pleading requirements for his negligence and gross negligence claims, even if the same core of operative facts underlie both. This was implicit in the Court's previous remark that although Plaintiff's allegations were insufficient to support his *Bivens* claim, they "may tend to show Captain Rakowski was negligent, perhaps grossly so, in failing to ensure that Plaintiff's contact lenses and medications were provided," (ECF No. 37 at 34), and is affirmed in Fourth Circuit precedent. *See McHan v. Comm'r*, 558 F.3d 326, 331-332 (4th Cir. 2009) ("The doctrine [of issue preclusion] does not apply where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second . . . .").

The Court also rejects the government's second argument against Plaintiff's negligence and gross negligence claims, namely that Plaintiff failed to administratively exhaust the claims

19

that pertain to HSA Foote because his administrative complaint was "devoid of any reference" to her in particular. (*See* ECF No. 97-1 at 38–39.) Just as the FTCA's presentment requirement does not call for an administrative complaint that names every specific cause of action asserted in a lawsuit (*see* Section III.B.1. *supra*), it is not essential that an administrative complaint name or assert claims against every individual involved in order to give the government adequate notice to investigate. *See Blankenship v. United States*, 111 F. Supp. 3d 745, 752 (W.D. Va. 2015) (presentment requirement met as to negligence claim against surgical team employees even where administrative claim focused on negligence of surgeon). Plaintiff's administrative claim complained that "Plaintiff made several requests to the medical staff at FCI Cumberland requesting his prescription contact lenses and prescription depression medications for two months while plaintiff was in the SHU." (ECF No. 97-2 at 184.) This gave the government adequate notice of HSA Foote's and other employees' alleged involvement in the events underlying Plaintiff's claims.

Third, the government argues that Plaintiff's allegations do not state a claim of negligence or gross negligence under Maryland law. To state a claim of negligence, a plaintiff must establish "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of the duty and the harm suffered, and damages." *Kennedy Krieger Inst., Inc. v. Partlow*, 191 A.3d 425, 440 (Md. 2018). A claim for gross negligence raises the evidentiary bar: "gross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affect the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Stracke v. Estate of Butler*, 214 A.3d 561, 568 (Md. 2019). The government argues that Plaintiff's claims fail because "Captain Rakowski had no duty to provide Plaintiff with his prescribed medication and contact lenses" and "complied with BOP and FCI Cumberland protocol" (ECF No.

20

97-1 at 37), and because the claims against HSA Foote and other Health Services division staff allege "negligence by a medical provider" but fail to plead, as required, an "applicable standard of care" (*id.* at 39–40).

However, the Amended Complaint plainly asserts that Captain Rakowski did *not* comply with BOP and FCI Cumberland protocol, as it alleges that Captain Rakowski failed to transfer the items in question to the Health Services Division or SHU property officer, which the government agrees he was required to do. (*See* ECF No. 92 ¶¶ 53, 56; ECF No. 97-1 at 37–40.)  Further, Plaintiff's negligence and gross negligence claims are asserted against the Defendant United States, not against Captain Rakowski in his personal capacity—it is the government who Plaintiff must plead had a duty to provide his medication, not Rakowski individually, and the allegations in the Amended Complaint are sufficient to do so.  So too the Court is persuaded by Plaintiff's assertion that his claim is not one for medical negligence—such as a misdiagnosis or mistreatment of an illness—but rather for plain/gross negligence consisting of the government's failure "to complete an administrative process and provide him with the contact lenses and medication that were seized from his cell," or, in the alternative, that the BOP and FCI Cumberland policies requiring the provision of inmates' medications when they are moved to the SHU supply a pertinent and adequately alleged standard of care in this context. (*See* ECF No. 102 at 29.)  Finally, the government strains credulity insofar as it argues that Plaintiff has not adequately alleged a breach of duty given that his lenses and medication were ultimately delivered to him. (ECF No. 97-1 at 40–41.)  While Plaintiff indeed concedes that his requests were eventually responded to and fulfilled, he plausibly pleads a significant delay in this result—specifically, that despite his "daily requests" (ECF No. 92 ¶ 30), his depression medication was not delivered until more than five weeks after he was moved to the SHU and his lenses more than six weeks after (*id.* ¶ 36).

21

Delays of appropriate medical care can indeed support a claim of negligence under Maryland law. *See, e.g., Howard v. United States*, No. 22-cv-950-ELH, 2023 WL 316580, at *11 (D. Md. Jan. 18, 2023); *Severe v. United States*, No. 20-cv-3404-SAG, 2021 WL 4521345, at *16 (D. Md. Oct. 1, 2021). The Court finds that the delay alleged here was not so insignificant as to entitle the government to judgment as a matter of law.

Finally, the government argues that because the undisputed evidence shows that "Plaintiff's requests for his prescription depression medication and contact lenses were responded to and fulfilled by the Health Services Division," it is entitled to summary judgment. (ECF No. 97-1 at 40.) But again, the government cites no authority providing that its delay was reasonable as a matter of law, and Plaintiff's Rule 56(d) declaration (ECF No. 102-1) shows that "for specified reasons," he "cannot present facts essential to justify [his] opposition" without further discovery. Specifically, Plaintiff seeks discovery about "what [Captain Rakowski] did with my medical items, including whether he did or did not transfer them to the Health Services Division after he seized them from my cell," "statements from individuals working in the SHU who received or were aware of my requests for assistance in obtaining my medical items," and "the relevant BOP policy(ies) concerning the procedures in place at FCI Cumberland for distribution of necessary medication and medical devices—such as contact lenses—when an inmate is taken to the SHU." (*Id.* ¶ 20.) Discovery on such issues could indeed create a genuine issue of material fact sufficient to defeat summary judgment, and thus, the Court finds that summary judgment would be premature at this juncture.

## IV.    Conclusion

For the foregoing reasons, the government's Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 97), will be granted in part and denied in part. Plaintiff's *Bivens*

22

claims and his FTCA claims for intentional infliction of emotional distress and abuse of process will be dismissed, and Defendant Rakowski will be dismissed from the action. However, Plaintiff's FTCA claims for assault, battery, negligence, and gross negligence will proceed to discovery. A separate Order will issue.

DATED this ___3___ day of March, 2026.

BY THE COURT:

James K. Bredar
United States District Judge